DONAHUE v. THE STATE.

[No. 20,640. Filed June 20, 1905.]

1. INDICTMENT AND INFORMATION.—Grand Jury.—Convoking at Adjourned Term.—The fact that the grand jury which returned the indictment was impaneled at an adjourned term of the court is not a sufficient ground for quashing such indictment. Wilson v. State, 1 Blackf. 428, distinguished. p. 150.

2. SAME. — Grand Jury. — Adjourned Term. — Presumption. — Where the proceedings relative to an indictment purport to have been held at an adjourned term, the presumption is, nothing appearing to the contrary, that such term was regularly held. p. 151.

3. SAME. — Motion to Quash. — Grand Jury. — Qualifications. — Abatement.—Where an indictment purports to have been returned by a legal grand jury, questions concerning the qualifications of its members and of their being regularly charged and sworn, except such as could have been presented by a challenge, if opportunity had existed, can not be raised by a motion to quash the indictment, but should be raised by a plea in abatement. p. 151.

4. SAME.—Separate Counts.—Aider.—Where the first count of an indictment properly sets out the impaneling of the grand jury in the proper county, and the second count recites that "said grand jury further find and present," such second count is aided by the first and is sufficient. p. 152.

5. SAME.—Murder.—"Means Unknown."—An indictment charging that the murder was committed "by means and ways unknown to this grand jury" is good. p. 152.

6. INDICTMENT AND INFORMATION.—*Good and Bad Counts.*—*Judgment.*—*Presumption.*—A judgment of conviction, upon an indictment containing good and bad counts, is presumed, in the absence of the evidence, to rest upon the good ones. p. 152.

7. NEW TRIAL.—*Murder.*—*Insanity.*—*Failure to Plead.*—*Newly-Discovered Evidence.*—A new trial will not be granted in a murder case because of newly-discovered evidence as to defendant's insanity where no plea of insanity has been made in the cause. p. 156.

8. SAME.—*Negligence.*—*Good Faith.*—Affidavits for a new trial on the ground of newly-discovered evidence must completely rebut the want of good faith and all inferences of negligence in the procurement of such evidence for such trial, such applications being regarded with disfavor. p. 156.

9. SAME.—*Negligence.*—Where the affidavit, in support of a motion for a new trial on the ground of newly-discovered evidence, shows that defendant's attorney failed to make inquiry as to defendant's alleged insanity from those who would be presumed to know most about defendant, the inference of negligence is not rebutted. p. 158.

10. TRIAL.—*Murder.*—*Insanity.*—*Continuance to Procure Evidence.*—It will be presumed that upon a seasonable or even a belated application, by counsel for defendant in a charge of murder, for time to procure evidence as to defendant's sanity, a continuance for a reasonable time would have been granted. p. 159.

11. NEW TRIAL.—*Newly-Discovered Evidence.*—*Effect on Result.*—Where newly-discovered evidence is such that the result of a new trial would probably not be different from the former one, the application therefor will be denied. p. 159.

12. SAME.—*Newly-Discovered Evidence.*—*Character of.*—Where the application for a new trial on the ground of newly-discovered evidence fails to set out any definite evidence except that of one witness who negligently failed to disclose same to defendant's attorney before the trial when she had abundant opportunity, such application will be denied. p. 160.

13. APPEAL AND ERROR.—*Evidence Not in Record.*—*New Trial.*—*Newly-Discovered Evidence.*—Error of the trial court in overruling a motion for a new trial on the ground of newly-discovered evidence will not be reviewed in the absence of the evidence in said cause. p. 160.

From Lake Circuit Court; *Willis C. McMahan,* Judge.

Prosecution by the State of Indiana against Edward Donahue for murder. From a judgment of conviction, defendant appeals. *Affirmed.*

*Thad. S. Fancher* and *Frank B. Pattee,* for appellant.

*Charles W. Miller,* Attorney-General, *C. C. Hadley, L. G. Rothschild, W. C. Geake* and *D. E. Boone,* for the State.

GILLETT, J.—Appellant was convicted in the court below of murder in the first degree, and it was adjudged that he suffer death.

It is first contended on his behalf that the indictment should have been quashed because it appears from the recitals of the record that the grand jury which

1.  indicted him was impaneled at an adjourned term of court. Section 1443 Burns 1901, §1380 R. S. 1881, contains the sole condition which the law imposes upon the transaction of business by the court at an adjourned term, and that is that the business pending at the close of the regular term of court shall remain undisposed of. The provisions of said section that all parties, witnesses, jurors and officers shall attend, as they were required to do, at the regular term, and that the court may proceed with the business of the court as a part of the regular term, coupled with the further provision that the adjourned term may be held for the transaction of business during the pleasure of the court while the business requires it, evince a purpose to authorize the court to proceed with the transaction of business generally during the holding of an adjourned term. See *Smith* v. *Smith* (1861), 17 Ind. 75. The language throughout said section is permissive, and when read in connection with §1717b Burns 1901, Acts 1873, p. 158, §2, it is clear that the court possessed power to impanel the grand jury during an adjourned term of court. Owing to the difference between §1443, *supra,* and the statute which was under consideration in *Wilson* v. *State* (1826), 1 Blackf. 428, we do not regard that case as in point.

As to the claim that the grand jury was acting in vaca-

tion, and not in term time, it is enough to say that the proceedings relative to the indictment purport to have

2. been had at an adjourned term, and, the record not showing the contrary, the presumption is that the term was regularly held. *Wood* v. *Franklin* (1884), 97 Ind. 117; *Lewis* v. *Albertson* (1899), 23 Ind. App. 147.

In addition to the above objections, a number of objections relative to the grand jury are urged upon our consideration.

It appears from an order-book entry that the grand jurors were sworn by the clerk, as required by law, and that the court appointed a foreman for the grand

3. jury, and instructed the members as to their duties. By a subsequent entry it appears that said grand jury returned into open court the indictment on which this prosecution is based. The first count recites that the presentment is made by "the grand jury of Lake county in the State of Indiana, good and lawful men, duly and legally impaneled, charged and sworn, for the adjourned November term of the Lake Circuit Court for the year A. D. 1904." A return to a writ of *certiorari* shows that the original indictment was indorsed: "A true bill, Edward De Briæ, foreman;" and that it is further indorsed: "Filed in open court January 30, 1905, Harold H. Wheeler, clerk Lake Circuit Court." So much for the face of the record. But in view of the provisions of §§1824, 1825, 1828 Burns 1901, §§1755, 1756, 1759 R. S. 1881, we deem it clear that, as against an indictment which purports to have been returned by a legal grand jury, a motion to quash does not present any question concerning the qualifications of the grand jurors, or as to their having been regularly charged and sworn. The most that can be said against the record proper in this cause is that its recital of facts is not very full; but we are of opinion that as to its matters of deficiency it was necessary to plead in abatement, assuming, of course, that there was no opportunity to make such objections, if any,

as might have been raised by challenge. *Willey* v. *State* (1874), 46 Ind. 363; *Pointer* v. *State* (1883), 89 Ind. 255; *Mathis* v. *State* (1884), 94 Ind. 562; *Henning* v. *State* (1886), 106 Ind. 386, 55 Am. Rep. 756.

Counsel for appellant state that the second count is bad because it does not appear that it was returned by a grand jury of Lake county. The introductory language of said count is as follows: "And for a second and further count said grand jury do further find and present," etc. In the particular mentioned, the second count was aided by the first count, which, as we have seen, contained full recitals upon the subject. *State* v. *Dufour* (1878), 63 Ind. 567.

Objection is made to the second count that it charges that the killing was "by means and ways unknown to this grand jury." Following the case of *Waggoner* v. *State* (1900), 155 Ind. 341, 80 Am. St. 237, we hold the paragraph good. Whether the proof warranted the averment is a question which is not involved in this appeal. But, even if the second count were insufficient, yet no objection exists to the first count, and, the evidence not being before us, it would be our duty to presume, in accordance with the rule of criminal procedure, that the judgment rested on the good count. *Powers* v. *State* (1882), 87 Ind. 97; *Dean* v. *State* (1897), 147 Ind. 215.

It is unnecessary to consider appellant's assignment based on his motion in arrest of judgment, but, formally to dispose of the assignment, we announce our conclusion that the motion was properly overruled.

But one question remains: Did the court below err in overruling appellant's supplemental motion for a new trial? It is claimed by his counsel that the affidavits filed in support of this motion made a case of newly-discovered evidence which not only warranted, but required, the granting of a new trial. There were two affidavits filed on appellant's

behalf in this connection—one made by an attorney for the defense, and the other by appellant's niece, Grace De Paola, who resided in Illinois.

The affidavit of said attorney disclosed that he assumed the defense of said cause about five weeks before the trial; that he had three or four consultations with appellant before the trial commenced; that appellant appeared perfectly sane and fairly intelligent; that he claimed he was innocent of the crime charged, and that in said consultations the affiant sought information from which to find evidence to corroborate appellant's claim of innocence; that affiant went to Illinois and had a twenty-minute consultation with said Grace De Paola, with reference to other subjects than insanity; that affiant went from there to Hobart, Indiana (the date is not fixed), and he heard at that place from four or five persons that there was a man living there—one Carleson—who had been a guard at the state prison at Michigan City, who had said that he had known appellant while the latter was confined in said prison, and that he (Carleson) believed that appellant was crazy; that upon interviewing Carleson the latter said that appellant at times was very melancholy, and acted rather strange, but that said Carleson expressed himself as unwilling to testify that appellant was insane. It further appears from said affidavit that affiant wrote to the warden of said prison, asking him to endeavor to obtain information concerning appellant's mental condition while in prison, and that said warden answered that he had been unable to gain such information. It also appears from said affidavit that affiant inquired of persons at the jail concerning appellant's sanity, and that they said they had observed no traits of insanity in him. Said affiant further deposed that he made no inquiry of appellant concerning his mental condition until after judgment; that he (affiant) had no information upon the subject, other than as above disclosed, until after that time, and that all of the facts tending to show insanity had developed since that

time.    The affidavit then alleges that, "as soon as he learned from Grace De Paola that the defendant had been insane," he wrote letters to the latter's mother and brother, who reside in the state of New York.    The letter to appellant's mother was answered by one Cornell, the proprietor of a livery stable, and his answer, aside from expressions of opinion to the effect that appellant was insane, stated that appellant "was a man of but few smiles; that at times, when in a heated talk, which he worked onto himself without any one talking, only himself, he would imagine himself in the West; then a very loathsome smile would pass over his face," and, upon the writer's changing the subject, appellant "would cool off."    There is another letter referred to in said affidavit as having been received from appellant's brother on the morning of the day that the affidavit was filed, which contained the statement that a number of persons, living at Camillurs, New York, could be procured to give evidence tending to prove appellant's insanity, one of them being appellant's mother and another his brother.    The attention of the court is directed by the affidavit to the fact that upon the trial a witness testified that in a saloon in Hobart on the night of the killing appellant seemed to be worrying, because "he was mumbling to himself," and affiant further deposed that during the course of the trial "traits of insanity" upon the part of appellant were manifested in the evidence, in that witnesses testified to his statements with reference to his bringing horses through the country in droves of four or five, and in one instance ten.    The affiant makes a showing of the probability of obtaining the deposition of said Cornell to the facts set forth in his letter, and that, if given until the next term of court, affiant can procure affidavits from the other persons mentioned above, as well as from certain mentioned persons in Illinois.    The affidavit concludes with a prayer that a new trial be granted, or that the cause be permitted to pend until the April term of said court, to enable affiant to procure further affidavits.

The affidavit of Grace De Paola is to the effect that she had learned from her mother (who was dead) and her grandmother (appellant's mother) that appellant was deaf and dumb for four or five years when a child, as the result of an attack of scarlet fever, and that the family had known and commonly understood that he was not sane. She further deposed to her long acquaintance with him, and to several peculiarities of conduct which she observed while he was visiting her in the fall of 1904, such as tearing up a silk skirt belonging to affiant, as well as his shirts, and denying that he had done so; walking up and down the road in the night-time, and mumbling; shutting off the gas, and leaving the house in darkness; and seeking to have a valuable horse, belonging to her, slaughtered at a horse slaughter-house, claiming that it was sick, which was not true. She also states in said affidavit that six years before appellant was given to mumbling; and that on one occasion he burned up a roll of money, saying that it "was no good." Affiant offered in said affidavit to testify to said matters and to appellant's insanity, if a new trial should be granted; and she further expressed the opinion that the postmaster of the town in which she lived would testify by deposition that appellant was insane during the time he was with her as aforesaid.

The State filed three counter-affidavits. The first one set out is by the court reporter, who took notes of the evidence during the trial. He deposed that throughout the trial appellant suggested questions to his counsel which were asked by them of the witnesses. Said affiant further deposed that he did not notice any traits of insanity in appellant, and that in all of his actions he appeared to be a person of sane mind and ordinary intelligence. There was an affidavit by the deputy prosecuting attorney to the effect that he cross-examined appellant upon the trial for a period of about six hours; that affiant did not notice any traits of insanity in appellant, and that he was apparently a bright

and intelligent witness. There was an affidavit by the sheriff stating that appellant was upon the witness-stand the greater part of a day; that he answered all questions intelligently; that during the trial he and his attorneys frequently consulted, and that there was nothing in his conduct to indicate that he was insane. Said last affidavit also covered the time from appellant's arrest, December 27, 1904, to the filing of said affidavit, March 9, 1905, and was to the effect that although affiant had seen appellant on almost every day during that time, and had talked with him a number of times, he (affiant) had never detected any traits of insanity in appellant, and that at each and every one of said conversations he appeared perfectly sane.

There was no plea of insanity in the case, and, so far as the special defense of insanity is concerned, it is clear that appellant was not entitled to a new trial on the ground of newly-discovered evidence in order to interpose that defense. *Davis* v. *Cleveland, etc., R. Co.* (1894), 140 Ind. 468; *Swift* v. *Wakeman* (1857), 9 Ind. 552. As was said in the case last cited: "Clearly the evidence discovered should relate to the issues made, and not to matters which were not involved in the suit." · It is true that under the plea of not guilty evidence as to the mental condition of appellant would have been competent as matter in mitigation, but, as the evidence which was introduced upon the trial is not before us, we are not able to determine, or even conjecture, whether an injustice was done by the verdict. Waiving, however, all considerations of the appropriateness of the motion for a new trial, we are of opinion that it may be affirmed, on at least two grounds, that it does not appear that the court below erred in overruling appellant's motion:

(1) The affidavits filed on appellant's behalf do not suf-·ficiently rebut the inferences of negligence and want of good faith which in such applications inevitably present themselves as obstacles in the path of the moving party where

there is not the clearest showing to the contrary. The peace of society, which demands that there shall be an end of litigation, the temptation to perjury to escape the adverse verdict, and the unconscionable advantage of having two opportunities to win, which the negligent suitor would enjoy, are reasons which conspire to cause courts to look with disfavor on applications for a new trial on the ground of newly-discovered evidence, and to refuse relief in the absence of a clear showing of diligence. In *Hines* v. *Driver* (1885), 100 Ind. 315, this court quoted with apparent approval the following statement of the law upon the subject as laid down in *Baker* v. *Joseph* (1860), 16 Cal. 173 : " 'Applications for this cause are regarded with distrust and disfavor. The temptations are so strong to make a favorable showing, after a defeat in an angry and bitter controversy involving considerable interests, and the circumstance that testimony has just been discovered, when it is too late to introduce it, so suspicious, that courts require the very strictest showing to be made of diligence, and all other facts necessary to give effect to the claim.' " In *Moore* v. *Philadelphia Bank* (1819), 5 Serg. & Raw. 41, it was said : "Motions of this kind ought to be received with great caution, because there are few cases tried, in which something new may not be hunted up, and because it tends very much to the introduction of perjury, to admit new evidence after the party who has lost the verdict, has had an opportunity of discovering the points both of his adversary's strength and his own weakness." See, also, *Coe* v. *Givan* (1825), 1 Blackf. 367; *Hines* v. *Driver, supra; Allen* v. *Bond* (1887), 112 Ind. 523; *Morrison* v. *Carey* (1891), 129 Ind. 277; *Chicago, etc., R. Co.* v. *McKeehan* (1892), 5 Ind. App. 124; *East* v. *McKee* (1895), 14 Ind. App. 45; *Callahan* v. *Caffarata* (1866), 39 Mo. 136; *State* v. *McLaughlin* (1858), 27 Mo. 111; *Braithwaite* v. *Aiken* (1891), 2 N. Dak. 57, 65; *Wallace* v. *Tumlin* (1871), 42 Ga. 462; 14 Ency. Pl. and Pr., 790.

While the claim which is now advanced is that appellant was insane; yet it is to be recollected that according to the undisputed evidence his mental condition after his arrest was such that he was capable of discussing the facts of his case and advising with his attorney in a manner wholly intelligent. It appears that at a date not fixed, but which, in the absence of a showing to the contrary, we are at liberty to presume was shortly after his attorney was retained, the latter heard from four or five sources that Carleson had asserted that he had known appellant, and that it was his (Carleson's) belief that appellant was crazy. The interview with Carleson did not dissipate the effect of this information, but only developed the fact that he could not be depended on to testify to appellant's insanity. What he learned from Carleson led said attorney to seek information from the warden of the state prison concerning appellant's mental condition, but it does not appear that he made any inquiry of appellant concerning his history, or as to the names and addresses of his relatives. It would be of members of the family, who would be likely to know of any taint of blood, sickness or injury, or previous irrational conduct, that an inquirer would naturally seek information in such a case as this. Having been admonished of his client's possible insanity, it was the duty of the attorney to search for evidence where, from the nature of the controversy, it would likely be found. *Chicago, etc., R. Co.* v. *McKeehan, supra.* It appears that it was by pursuing this very course, which ought before to have been regarded as the open sesame to information upon the subject, that the matter on which the application for a new trial was based was discovered. Especially does it seem to us that inquiry ought to have been made of Grace De Paola, whom said attorney had been in consultation with, as soon as he had information which was calculated to raise a doubt as to appellant's sanity.

We are bound to presume that the trial court on applica-

tion would have granted a continuance to enable appellant's representative sufficient time to ascertain whether there was any evidence upon the subject referred to. Even a late application for a continuance would have deserved more favorable consideration than a motion for a new trial based on a claim of the existence of newly-discovered evidence, for the granting of a continuance would have been an act within the reasonable discretion of the court, while the effect of the granting of a new trial would not only have been to give appellant two chances to succeed before a jury, but it would have relieved him of the embarrassment of bringing forward in the same trial defenses which would be likely to prove more or less conflicting.

The authorities assert that in applications of this kind the failure to discover the evidence must be so broadly excused as to dissipate all surmise to the contrary. *Hines* v. *Driver, supra; Keisling* v. *Readle* (1891), 1 Ind. App. 240; 3 Graham & Waterman, New Trials, 1026. Giving to appellant the benefit of all presumptions to which his alleged condition entitles him, we can not say that such a showing has been made in this case. Indeed, if responsibility for the gathering of evidence in a case of this kind is to rest anywhere, it seems to us that the showing made falls far short of overthrowing the hostile inference. of a want of diligence which must be indulged in every such application in the absence of a clear showing to the contrary.

(2) We are unable to say that it is clear that if a new trial were granted the proposed evidence would be strongly calculated to change the result. In *Hines* v. *Driver, supra,* this court said: "All of the cases agree that the newly-discovered evidence must be of such a character as to make it obvious that a different result would be produced on another trial, or, as some of them say, 'raise a violent presumption' that it would change the result. *Hull* v. *Kirkpatrick* [1853], 4 Ind. 637; *Taylor* v. *State*

[1853], 4 Ind. 540; *Rainey* v. *State* [1876], 53 Ind. 278. But, whatever may be the correct form of expressing the rule, it is undoubtedly true, as said in *Swift* v. *Wakeman* [1857], 9 Ind. 552: 'In such applications, the party seeking a new trial must make a strong and clear case.' "

There was really no definite offer of new evidence in this case except that of Cornell and Grace De Paola. The statements of the former consisted so largely of opinion that it is difficult to determine what the real effect of his testimony would be, while Grace De Paola stands seriously discredited by her failure voluntarily to disclose to the attorney of appellant matters of obvious importance. There is nothing to show us, and perhaps the trial court was left without information, as to what the alleged mania of appellant had, or might have had, to do with the killing of the deceased. A circumstance, too, of no small importance is the reserve of the attorney who made the affidavit on appellant's behalf. He does not depose that he ever discovered the slightest signs of mental aberration in his client, or that he believes that the statements of others which he brings forward are true. Indeed, there is a tendency to reserve and caution in said affidavit, which makes it, when taken as a whole, create the impression that it is the effort of a lawyer to suggest, in the interest of a client condemned to death, the possibility of obtaining testimony which would be important, if true, but which the affiant is unwilling to vouch for, even upon information and belief. We have before us a motion for a new trial in which neither the party nor his attorney stands as sponsor for the truth of the newly-discovered evidence. The court below could scarcely have been expected to heed a claim as to the existence of new evidence in these circumstances. See 14 Ency. Pl. and Pr., 825. In addition to the defects in the showing which we have pointed out, it remains to be stated that we are unable to review the ruling of the trial court, because there has been no

effort to get the evidence which was introduced upon the trial before us. It is thoroughly established that the ruling of a court in refusing a new trial on the ground of newly-discovered evidence will not be considered unless the evidence given upon the trial is in the record. *Townsend* v. *State, ex rel.* (1859), 13 Ind. 357; *O'Brian* v. *State, ex rel.* (1860), 14 Ind. 469; *Cowden* v. *Wade* (1864), 23 Ind. 471; *Harsh* v. *Kegley* (1880), 72 Ind. 398; *Cooper* v. *Bartlett* (1898), 150 Ind. 693. As said in *Ruddick* v. *Ruddick* (1863), 21 Ind. 163: "How can this court, while in ignorance of the evidence given on the former trial, say what, in connection with that evidence, might be the effect of the newly-discovered evidence, upon another trial?" Even if it could be said that the counter-affidavits did not make a case of conflicting evidence which would forbid a review of the action below *(Roose* v. *Roose* [1896], 145 Ind. 162; *De Hart* v. *Aper* [1886], 107 Ind. 460), yet we can not say that, fortified by these affidavits, and with the opportunity of observing appellant during a day's examination on the witness-stand, the trial court was not justified, especially in view of the weakness of the showing made, in concluding that a clear case for a new trial was not made out. Indeed, we may state, without any disposition to discredit the defense of insanity, that in a case where the defendant is a man of intelligence, who has testified at length as a witness, and has been defended by experienced counsel, the claim that he was not mentally responsible for the act charged, and that evidence of the fact which is really newly-discovered exists, carries on its face a degree of improbability which would be likely in most cases to cause it to fall of its own weight.

It is our conclusion that it is not shown that the court below erred in overruling appellant's supplemental motion for a new trial. The judgment is affirmed.