FULLER v. STATE OF INDIANA.

[No. 26,837. Filed October 26, 1937. Rehearing denied January 3, 1938.]

*Orph M. Hall,* for appellant.

*Omer S. Jackson,* Attorney-General, and *Patrick J. Smith,* Deputy Attorney-General, for the State.

ROLL, J.—Appellant was convicted of the crime of murder and now rests under sentence of death.

The only error assigned on this appeal is the overruling of his motion for a new trial. The reasons assigned in his motion for a new trial are: ·(1) Insufficiency of the evidence, (2) the verdict of the jury is contrary to law, (3) newly discovered evidence, (4) accident and surprise.

Appellant filed a special plea of insanity, and the insufficiency of the evidence to support the verdict is directed to the evidence on that issue and not to the evidence of the killing.

Three duly licensed and practicing physicians were appointed by the court to examine appellant as to his sanity and they testified at the trial of appellant without objection or exception. Therefore no question is raised as to the competency or incompetency of their testimony. Appellant's position with reference 'to the evidence given by the three physicians is that said testimony was based upon hearsay, and upon unsworn statements of persons who had seen appellant on July 17, 1936, and thereafter. The evidence shows that the alleged crime was committed on July 16, 1934, and that the physicians made an examination of appellant a few days before they testified. They testified that at the

request of the court they examined appellant at the Vigo County jail. That they talked with appellant, asked him questions, observed his reactions to different questions, observed his appearance, detected no nervousness, no twitching of any character. One of the physicians was asked the nature of his examination, to which he answered: "Well, by talking to the man. I watched his general makeup, or expressions; his eyes, for the most part. I watched for any nervous symptoms; twitching or anything like that; . . ." All of the physicians stated that in their opinion appellant was sane at the time of the examination and was sane on the 16th day of July, 1936.

One of the physicians testified that he talked to one of the jailers about the actions and conduct of appellant during his confinement in the jail.

Appellant seems to be impressed with the thought that because the witnesses talked with appellant and asked him questions and because one or two of the examining doctors talked with the jailer about appellant's acts and conduct during the time he was confined in jail, that the doctors' testimony was of no probative force whatever and was based on hearsay and was the same as no evidence at all, and as the testimony of the physicians was all the evidence introduced to prove appellant sane at the time of the alleged crime, the fact of sanity was not established and therefore the evidence was not sufficient to support the verdict. In support of appellants' contention he cites the following cases: *People* v. *Hawkins* (1888), 109 N. Y. 408; *People* v. *Strait* (1896), 148 N. Y. 566; *People* v. *Nino* (1896), 149 N. Y. 317.

An examination of these cases will show that the court had under consideration a far different question than the one presented here. In the above case of *People* v. *Hawkins, supra,* the doctor made the prison-

er's description as to his previous condition the basis of his opinion. The court said (p. 141):

> "The prisoner's declaration in November as to his condition in September was not competent as evidence of his actual condition at that time, nor could it be the basis of a scientific opinion as to whether he was sane or insane at that period. Had the question related to his condition at the time of the interview, the result might be quite different. Everything said or done at a given period serves to disclose the mental state of the actor, but his narration as to what he said or did, or of his feelings or bodily ailments upon a former occasion, furnishes no foundation for an opinion as to his actual state or condition at that time. It is of no higher grade than the declarations of third persons as to a past transaction, and in like manner is inadmissible. The witness was admitted to testify as an expert concerning the mental condition of the person in question, and his opinion would be of value only when founded on facts observed by himself, or proved by other witnesses under the obligation of an oath, or upon hypothetical statements."

To the same are the other cases above cited. In the present case no such question is presented. The opinion of the three doctors to the effect that appellant was sane was based upon their own personal examination and observation of appellant, and such opinion is not only competent, but is sufficient to support a verdict on that question on appeal. It was said in *People* v. *Lake* (1855), 12 N. Y. 358, 363, and quoted with approval in *People* v. *Strait, supra,* thus (p. 571):

> " 'Where a medical man, conversant with the disease of insanity, has had sufficient previous opportunity by his own observation to become acquainted with the personal habits, conduct and appearance of the accused, upon authority, I think, he may be asked the general question and give his opinion as to the sanity or insanity of the prisoner. In such cases it might be impossible for him to communicate to the jury every fact and circumstance and

all the details of conduct, habits and appearance and the other particulars upon which he had formed his conclusions. Of course he may be questioned as to these and as to his experience, skill, etc.' "

It has been recognized by courts that physicians may acquire facts from their own observations and that there is much in the actions, conduct and appearance of a person that aids the physician in forming his conclusion as to the sanity or insanity of the person under observation. All such facts he may not be able to convey to the jury but he may be questioned concerning them. This was done in the present case and we think the evidence not only competent, but formed a sufficient basis upon which a jury could base its verdict of sanity. We hold that the verdict was sustained by sufficient evidence and was not contrary to law.

Another ground urged for a new trial was based upon newly discovered evidence. The newly discovered evidence for which he urges the court to grant a new trial related to the question of sanity of appellant at the time of the alleged crime. The newly discovered evidence is set forth in affidavits filed with and incorporated in his motion, and consists of six separate affidavits. The substance of these affidavits are that affiants had known appellant for many years and that he believed his friends were in a conspiracy to kill him and were plotting to take his life, and also that appellant thought he possessed extraordinary powers and that he was a super human being; that he could read men's thoughts, and foretell their future. That appellant possessed a propensity to steal and to destroy and to kill both persons and animals. That he was immoral and associated with immoral persons; that he committed rape and robbery during the time affiants knew him; that he was eccentric, queer and wayward; that he would become suddenly violent and would

threaten to kill persons and animals, blow up buildings with dynamite or destroy them with fire. Two of the affidavits recite that when appellant was about nine years old he became enraged at another small boy because he spilled a bucket of milk, and threatened to shoot him. This was done in the presence of the affiant and the mother of the young boy. That appellant was moody and that he carried. a silly grin and would laugh and stare at persons when they would talk to him. All of the affiants stated that appellant was of a low mental type and that in their opinion he was of unsound mind on July 16, 1936. It appears from the motion for a new trial and the affidavits filed therewith that all the affiants lived within one-half mile of the court house of Vigo County. One of the affiants was the father of appellant, who was called by and testified in behalf of appellant. Another of the affiants was a sister of appellant and another was his brother-in-law. The others were friends and neighbors, all easily accessible and available as witnesses. No showing or any attempt was made to show diligence at the trial in securing this evidence. No reason whatever is made to appear why appellant did not ·discover the evidence prior to the trial. He was assigned an attorney to conduct his defense, a lawyer of known reputation, ability and of good standing at the bar of this court and well known by the members of this court.

Upon the question of granting a new trial upon newly discovered evidence this court, in the case of *Donahue* v. *State* (1905), 165 Ind. 148, 157, 74 N. E. 996, said:

"The peace of society, which demands that there shall be an end of litigation, the temptation to perjury to escape the adverse verdict, and the unconscionable advantage of having two opportunities to win, which the negligent suitor would enjoy, are reasons which conspire to cause courts to look with disfavor on applications for a new trial on the ground of newly-discovered evidence, and to refuse

relief in the absence of a clear showing of diligence."

In *Hines* v. *Driver* (1885), 100 Ind. 315, 321, the court quoted with approval the following statement of the law as laid down in *Baker* v. *Joseph* (1860), 16 Cal. 173:

> " 'Applications for this cause are regarded with distrust and disfavor. The temptations are so strong to make a favorable showing, after a defeat in an angry and bitter controversy involving considerable interests, and the circumstance that testimony has just been discovered, when it is too late to introduce it, so suspicious, that courts require the very strictest showing to be made of diligence, and all other facts necessary to give effect to the claim'."

Many authorities are collected and cited in the Donahue case, *supra*, to the effect that motions of this kind ought to be received with great caution, because there are few cases tried in which something new may not be hunted up, and because it tended very much to the introduction of perjury to admit new evidence after the party who has lost the verdict has had an opportunity of discovering the points both of his adversary's strength and his own weakness. If it could be said that any showing at all was made, we are of the opinion that it falls far short of overthrowing the hostile inference of a want of diligence which must be indulged in every such application in the absence of a clear showing to the contrary. We therefore hold that there was no error in refusing appellant a new trial on the ground of newly-discovered evidence.

Appellant's fourth and last cause for a new trial was on the ground of accident and surprise. In his motion for a new trial he alleges that he was arrested on July 17, 1936, and soon thereafter he was placed in the Vigo County jail and was not al-

lowed to communicate with anyone; that he had no means to employ counsel and alienists to testify in his behalf; that the pauper attorney of Vigo County was assigned to him, who filed a plea of insanity to which plea the State filed a reply in general denial. That the appellant had no witnesses or alienists subpoenaed and no other person except his father. That because he was of unsound mind and because he was in solitary confinement he was unable to subpoena witnesses and prepare for his defense and thus he was deprived of his life and liberty without due process of law in violation of Article 5, being the 5th Amendment to the Constitution of the United States; and also that he was thus deprived of his right to have compulsory process for obtaining witnesses in his favor; and to have the assistance of counsel in violation of the 6th Amendment to the Constitution of the United States. That by reason of the above facts his rights guaranteed by §1, Art. 14, of the Constitution of the United States have been violated, and also similar rights guaranteed by the Indiana Constitution.

It will be noted that the attorney who defended appellant at the trial is no longer appearing as his attorney on this appeal, but that another attorney presents this appeal on behalf of appellant. There is no showing of accident or surprise within the meaning of Clause 6, §9-1903 Burns Ann. St. 1933, §2810 Baldwin's 1934. Appellant was represented by an attorney who is a member of the Vigo County Bar and also a member of the bar of this court. There is no attempt to show in what way appellant was surprised or in what manner the accident occurred. No motion was made for a continuance. Appellant was present at the trial, made no objection to going to trial and at no time requested the court to subpoena any witnesses or made known to the court that he desired the aid of the court in securing

witnesses for himself. Under such a state of the record no question is presented under this cause for a new trial. *Anderson* v. *State* (1928), 200 Ind. 143, 161 N. E. 625; *Stalcup* v. *State* (1891), 129 Ind. 519, 28 N. E. 1116; 20 R. C. L. 287; 16 C. J. 1128-1129.

We find no reversible error. Judgment affirmed.