Ronald Ray LYLES, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 82A04–9006–CR–260.

Court of Appeals of Indiana, Fourth District.

Aug. 27, 1991.

Rehearing Denied Oct. 10, 1991.

Cole G. Banks, Evansville, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Ian A.T. McLean, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

CONOVER, Judge.

Petitioner–Appellant Ronald Ray Lyles appeals his convictions for Burglary, a

class A felony, IND.CODE 35–43–2–1; Confinement, while armed with a deadly weapon, a class B felony, IC 35–42–3–3; Battery, with a deadly weapon, a class C felony, IC 35–42–2–1; and Intimidation, committed by use of a deadly weapon, a class C felony, IC 35–45–2–1.

We affirm in part and reverse in part.

Lyles presents the following rephrased and consolidated issues:

1. whether the evidence was sufficient to support Lyles' conviction on all charges;

2. whether the trial court erred in denying Lyles' request for a new trial based on newly discovered evidence;

3. whether the trial court improperly limited Lyles' cross examination of the victim;

4. whether double jeopardy prevents Lyles' convictions for both burglary and battery; and

5. whether double jeopardy prevents Lyles' convictions for both confinement and intimidation.

The facts most favorable to the verdict reveal that Lyles, the publisher of an Evansville magazine, met with Angela Gray on a couple of occasions for the alleged purpose of providing her a job as a model. Subsequent to a meeting in his home, Gray filed charges against Lyles in which she alleged he pushed her and would not let her leave after she refused his sexual advances.

On February 28, 1989, Lyles entered Gray's residence, without her knowledge or consent, through a door which was closed but unlocked. He proceeded to the bathroom where Gray was curling her hair. He confronted her about filing the prior complaint and he ripped the curling iron from her head, taking some hair with it. He struck her in the stomach, and continued to do so even after she reminded him that she was pregnant. When she attempted to fight back, he grabbed her arm to keep her from further resisting or from leaving the room. He then pulled out a box cutter and cut her on the face and chest over forty times. He also yelled obscenities and told her he would cut her throat for filing the

earlier report. He finally left after about twenty minutes.

Lyles' attacks resulted in convictions for burglary, battery, intimidation, and confinement. He now appeals.

Additional facts will be provided below as necessary.

Lyles contends the evidence was insufficient to support his conviction on any of the charges. He specifically argues the jury should have believed his testimony concerning an alibi over Gray's testimony concerning the attack.

When presented with a claim of insufficient evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. Rather, we view the evidence in the light most favorable to the State. *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, 1264, *reh. denied, cert. denied,* (1980), 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. If there is substantial evidence of probative value to support the jury's verdict, we will affirm the conviction. *Meredith v. State* (1987), Ind., 503 N.E.2d 880, 882.

Even the uncorroborated testimony of a victim is sufficient to sustain a conviction. *DeBruhl v. State* (1989), Ind., 544 N.E.2d 542, 546. Here, Gray testified in detail regarding the particulars of the attack in her home. In so doing, she unequivocally named Lyles as her attacker. Her injuries were corroborated at trial by introduction of photographs and the testimony of those who observed her after the attack. In addition, other witnesses testified a car matching the description of Lyles' car was parked outside her home at the time of the attack. There is sufficient evidence to support the convictions. Lyles merely invites us to invade the province of the jury by reweighing the evidence. We decline the invitation.

With respect to the burglary conviction, Lyles contends an element of the offense was not established. He claims he did not break and enter because he had implied permission to enter the house. He also claims his entry was ratified by Gray be-

cause she did not ask him to leave as soon as she saw him.

 A defendant's belief that he has permission to enter must be reasonable in order for the defendant to avail himself of the defense of consent. *Hicks v. State* (1987), Ind., 510 N.E.2d 676, 680. Here, Lyles testified he had knocked the two previous times he had been at Gray's house. When the prosecutor asked him if he knew whether he had the right to walk into Gray's house unannounced, Lyles responded, "no it is proper to knock on anyone's door." (R. 619). Further, Lyles was aware Gray had recently filed charges against him, and therefore would not logically consent to his free access to her home. Under these circumstances, a jury could certainly find Lyles did not have a reasonable belief Gray had consented to his entry.

 Lyles also contends Gray somehow ratified his entry into her house by not immediately protesting his presence. In other words, Lyles contends the fact a startled victim delays protest to a breaking and entering somehow negates the prior illegal entry. We find this "theory", which is unsupported by any citation to authority, to be unpersuasive. Rather than a belated invitation into her home, it is more likely that Gray's hesitancy was attributable to her desire not to further anger Lyles.

Lyles contends the trial court erred in not granting him a new trial due to newly-discovered evidence. After trial, Lyles located David Kokomoor, an employee at the Holiday Inn where Lyles was last seen before the attack, whose testimony, in Lyles opinion, would bolster his alibi.

 We note that "[m]otions for a new trial predicated upon newly-discovered evidence are viewed with disfavor." *Scott v. State* (1987), Ind., 510 N.E.2d 170, 174, *cert. denied*. The decision to grant a new trial is within the discretion of the trial court and will not be disturbed absent an abuse of such discretion. *Id.*

 In *Francis v. State* (1989), Ind., 544 N.E.2d 1385, 1386, our supreme court stated that where an appellant's motion to correct errors includes a claim of entitlement to a new trial upon discovery of evidence subsequent to trial, an appellant must show 1) the evidence has been discovered since trial; 2) it is material and relevant; 3) it is not cumulative; 4) it is not merely impeaching; 5) it is not privileged or incompetent; 6) due diligence was used to discover it in time for trial; 7) the evidence is worthy of credit; 8) it can be produced on a retrial; and 9) it will probably produce a different result.

At trial, Gray testified that she was attacked at about 6:00 p.m. Lyles testified he was at a cocktail party at the Holiday Inn until roughly 5:55 p.m., at which point he went to the restroom and then made a ten minute phone call to his brother on a pay phone in the hotel lobby. Several hotel employees testified they saw Lyles at the party somewhere between 5:30 and 5:45 p.m., but none of them knew when he left the hotel. The employees were able to easily identify him because he regularly attended these parties.

Lyles testified he spoke on the phone with his brother until 6:10. Lyles' brother testified the phone call occurred somewhere between 6:00 and 7:00 p.m., and that he did not know where Lyles was calling from. Lyles further testified that after he finished speaking with his brother 1) he drove to a store located approximately three-tenths of a mile from Gray's house; 2) purchased ice cream at 6:24 p.m.; 3) went to his estranged wife's house between 6:25 and 6:30; 4) left about five minutes later; and 5) arrived at his home at around 6:40, where he stayed the rest of the night.[1]

 Lyles now claims Kokomoor can provide new evidence to substantiate his alibi. He points to Kokomoor's affidavit, in which he stated that he saw Lyles on the phone a little before 6:00 p.m., but did not know when Lyles left the hotel.

1. Gray's house was about a seven minute drive from the hotel.

■ Lyles' claim fails because he did not affirmatively establish at least three of the elements required by *Francis*. First, Lyles did not show that he used due diligence to obtain Kokomoor's information prior to trial. As our supreme court has held, motions for a second trial based on evidence alleged to be newly-discovered are subject to a "hostile inference of want of diligence which must be indulged in every such application in the absence of a clear showing to the contrary." *Fuller v. State* (1937), 213 Ind. 144, 10 N.E.2d 594, 596. A finding of due diligence does not rest upon abstract conclusions about, or assertions of, its exercise but upon a particularized showing that all the methods of discovery reasonably available to counsel were used and could not uncover the newly-found information. *See, Stephens v. State* (1987), Ind., 506 N.E.2d 12, 16 (a second trial cannot be held on evidence capable of being discovered with due diligence); *Scott, supra* (appellant must demonstrate what due diligence he used to discover the evidence before trial); *Hestand v. State* (1986), Ind., 491 N.E.2d 976, 979 (appellant must show the exercise of diligence in trying to discover evidence prior to trial); *Bradburn v. State* (1981), Ind., 425 N.E.2d 144, 146 (holding appellant must show what steps, if any, he took to obtain such evidence prior to trial).

■ Lyles did not find out about Kokomoor until shortly after trial when Kokomoor went to the Holiday Inn manager and told him what he had seen. Lyles could have found Kokomoor, who had been a desk clerk and auditor for at least two years, if he had conducted a more complete investigation on his own. Before trial, Lyles' counsel interviewed several of the hotel managers and employees. Lyles' counsel could have easily asked the managers or employees if they knew of any other employee who might have seen Lyles, or at the very least he could have asked them who was working at the front desk on the night in question.[2]

Second, Lyles did not show the newly discovered evidence was not merely cumulative. At trial, Lyles testified he was on the phone at approximately 6:00 p.m. Further testimony from hotel staff indicated Lyles was seen near 6:00 but was not seen on the premises at or after 6:00. Kokomoor stated he saw Lyles before 6:00, but did not see him after 6:00. Kokomoor's affidavit confirms the testimony already given; it adds nothing to the evidence.

Third, Lyles did not make the required showing to the trial judge that the new evidence would raise a strong presumption that, in all probability, it would produce a different result upon retrial. Because Kokomoor's statement did not place Lyles at the hotel after 6:00, it would create no more reasonable doubt than the testimony of the other hotel employees.

Lyles argues the trial court erred in sustaining the State's objection to questions which Lyles asked Gray during cross-examination. The questions were intended to show that someone else had a motive to attack Gray. Gray had been dating Chris Fluty for two weeks and was pregnant with someone else's child. Lyles asked the following questions on cross-examination:

XQ: Who was the father?

A: I don't know. The father of my child was Robert Lee Hardin.

XQ: Do you know if he was in town?

A: He was in town.

2. Lyles argues that *Francis, supra,* supports his claim that he used due diligence in looking for witnesses prior to trial. We disagree.

*Francis* held that the "due diligence requirement did not include polling all the employees of the neighboring industrial site in hopes of finding workers that were outside the plant at the crucial time able to observe, identify and remember who was in the [parking] lot." *Id.,* at 1387. There, two workers from an auto plant happened to be outside and allegedly saw the victim in a near-by parking lot with someone other than the defendant. Here, Lyles knew he had passed through the hotel's lobby and had personal, direct contact with hotel supervisors whom he deposed and questioned. It is far more reasonable that due diligence requires searching for witnesses among this known and immediately accessible source than the search envisioned by *Francis,* which was of an unknown industrial site of indeterminate distance from the relevant location and involved a set of events which persons would have been unlikely to notice or remember.

XQ: When was the last time you saw
...

STATE: Judge, I am going to OBJECT. This is totally irrelevant.

BY THE COURT: I am going to SUSTAIN the objection to any further interrogation along this line.

(R. 350–351).

Our supreme court has stated that "the trial judge has discretion to determine the scope of cross-examination and only a clear abuse of discretion warrants reversal." *Braswell v. State* (1990), Ind., 550 N.E.2d 1280, 1282. The general rule is that questions on cross-examination are properly excluded if they are not within the scope of the direct examination. *Ingram v. State* (1981), Ind., 426 N.E.2d 18, 20. If a defendant has evidence indicating someone other than himself had a motive and is a more likely suspect, that evidence should be presented during the defense phase of the trial. *Id.*

On direct, Gray was asked whether she informed Lyles of her pregnancy before he hit her in the stomach. On cross-examination, Lyles not only asked about the pregnancy but attempted to go beyond the scope of direct by trying to establish the whereabouts of the father at the time of the attack. If Lyles had any evidence linking the father, Robert Lee Hardin, to the attack, he should have been introduced it during the presentation of the defense. *Id.* Lyles did not introduce any such evidence when presenting his case. The court's limitation on the scope of cross-examination was not an abuse of discretion.

Lyles contends his convictions for both burglary and battery, and his convictions for both confinement and intimidation, put him in a position of double jeopardy. Similarly, the dissent in this case discusses the issue of whether Lyles' convictions for both confinement and battery put him in a position of double jeopardy.

Our supreme court has recently noted the applicability of the double jeopardy clause has been a constant source of intellectual struggle in American courts. *Hall v. State* (1986), Ind., 493 N.E.2d 433, 435. Our examination of Indiana decisions dealing with the application of the clause reveals the struggle now takes place within a quagmire of cases utilizing various, and sometimes contradictory, theories. The result has been that each time the issue arises—and it arises more and more frequently—the reviewing court must sift through a myriad of cases in an attempt to reach a reasoned decision, all the while knowing that it is impossible to reconcile the inconsistent precedents. Thus, we look to our supreme court's decisions for guidance.

An examination of double jeopardy begins with *Blockburger v. United States* (1932), 284 U.S. 299, 52 S.Ct. 180, 75 L.Ed. 306. In *Blockburger*, the Supreme Court held that where the same act constitutes a violation of two distinct statutory provisions, "the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." 52 S.Ct., at 182. (Citations omitted).

In *Elmore v. State* (1978), 269 Ind. 532, 382 N.E.2d 893, our supreme court examined *Blockburger*, and determined "[t]he crucial inquiry ... requires a determination of whether the *offenses* are the *same* for purposes of double jeopardy." 382 N.E.2d, at 895. (Emphasis in original). In interpreting *Blockburger*, the court went on to say

The focus of a proper double jeopardy analysis must be on whether or not the offenses to be prosecuted and punished are the same, and not whether the offenses spring from the same act or operative circumstances. The inquiry into whether the offenses stem from the same act is merely the first step in the analysis. If the offenses are premised upon different acts, the problem is not so great. But where they do arise from the same act, we must proceed to determine whether the offenses charged are themselves the same, for the Double Jeopardy Clause was written in terms of the "same offence", not the same act. In other words, the fact that the offenses stem from the same act merely informs us that there is a potential problem; it is

not a solution to the problem. The ultimate focus is on the identity of the offenses, not on the identity of the source. *Id.*, at 897.

Our supreme court expanded on the *Blockburger* approach in both *Bevill v. State* (1985), Ind., 472 N.E.2d 1247, *reh. denied*, and *Tawney v. State* (1982), Ind., 439 N.E.2d 582. In *Bevill*, the court held the appellant's convictions for both attempted murder and class A burglary could not stand where an examination of the charges revealed that a single stabbing constituted the sole basis for the attempted murder charge and the enhancement of the burglary charge. Stated differently, the single stabbing could not be used to satisfy the element of bodily injury for class A burglary and to satisfy the substantial step element for attempted murder. In so holding, the court noted that "a person may not be twice punished for a single *offense* arising from one set of circumstances." 472 N.E.2d, at 1254. (Emphasis supplied). In *Tawney*, the court held that double jeopardy prevented the appellant from being convicted of both class A robbery and class C battery. The court found error because the battery charged was the "force" allegedly employed in the commission of the robbery charged. Therefore, "[t]he battery was not merely an offense that occurred in the same criminal episode, it was a necessary element of the robbery, *as charged*." 439 N.E.2d, at 588. (Emphasis in original).

In *Hall, supra*, a case where parents were convicted and sentenced for both reckless homicide and neglect of a dependent for the death of their child, our supreme court again examined the applicability of the double jeopardy clause. The court acknowledged the correctness of precedent which held that a double jeopardy analysis does not end with a *Blockburger* evaluation and comparison of the statutory provisions. The court then examined the factual bases alleged in the informations and found that the pattern of neglect was the means by which the reckless homi-

cide was committed. The court held that the neglect of a dependent conviction and sentence should be vacated because neglect was the instrumentality by which the other offense was committed. Significantly the court observed that the offense of neglect, as charged, was of the type that under most circumstances would be a lesser included offense which would merge with the greater offense. *Id.*, at 436 (citing *Tawney, supra*, at 588).

█ Two truths may be gleaned from examination of our supreme court's decisions. The first is the *Blockburger* approach of looking at statutory requirements has been expanded to require an examination of offenses as charged. The second is our court, to prevent perceived violations of the double jeopardy clause, has in the past on occasion used phrases and concepts taken out of context to arrive at decisions well outside the parameters established by the Constitution and our supreme court's decisions. The result has been a return to a rule placing undue importance on the "same act" rather than on whether the *offenses* prosecuted and punished are the same.[3] This approach was condemned by our supreme court in *Elmore, supra*, at 897. With this in mind, we examine both the claims of Lyles and of the dissent.

Burglary is a class A felony if "it results in either bodily injury or serious bodily injury to any person other than a defendant." IC 35–43–2–1. The burglary charge against Lyles included the language of the statute, and included an allegation that Lyles caused bodily injury to Gray.

Lyles was also charged with battery as a class C felony. Battery is a class C felony "if it results in serious bodily injury to any other person *or* it is committed by means of a deadly weapon." IC 35–42–2–1. (Emphasis added). The battery charge filed against Lyles followed the language of the statute and stated that the battery was committed "by means of a deadly weapon." (R. 19). The charge did not mention bodily injury or serious bodily injury as an aggra-

---

**3.** A single criminal episode may include numerous offenses. *See, Tawney, supra*, at 588.

vating circumstance for enhancing the battery to a class C felony.

■ The burglary and battery charges do not place Lyles in statutory jeopardy because each statute requires proof of an element the other does not. *See, Elmore, supra.* Burglary requires proof of breaking and entering with intent to commit a felony while battery requires proof that the defendant touched another person in a rude, insolent, or angry manner. IC 35–43–2–1; IC 35–42–2–1.

■ Likewise, the charging jeopardy prohibition was not violated by the burglary and battery charges. In the information, the burglary charge was elevated to a class A felony because Gray sustained injury when Lyles entered her home with the intent to commit a felony. The battery charge was not elevated to a class C felony because Gray sustained bodily injury, but because of Lyles' use of a knife (deadly weapon) to commit the battery. In other words, Lyles entered and struck Gray repeatedly, causing bodily injury. When she retaliated he produced a deadly weapon and committed battery. These were two distinct crimes. Lyles' convictions for burglary and battery do not place him in double jeopardy.

■ We find *sua sponte*, however, that the enhanced charges for intimidation and battery violate the rule of *Bevill, supra.* Battery was charged as being committed "by means of a certain deadly weapon, to-wit: a metal instrument having a sharp triangular blade...." (R. 20). Intimidation was charged as being "committed by use of a deadly weapon, to-wit a metal instrument having a sharp triangular blade...." (R. 20). The phrase "committed by means of a deadly weapon" has the same meaning as the phrase "committed by use of a deadly weapon". Under *Bevill,* the same use cannot be utilized to enhance both charges. Accordingly, the intimidation conviction as a class C felony should be entered as a conviction for a class D felony.

Lyles contends his convictions for both confinement and intimidation place him in double jeopardy. He states he was in the act of confining Gray when he threatened to cut her throat because she had earlier reported him to the police. Thus, he reasons the threat (intimidation) was part of the confinement, and the two offenses merge.

■ The offense of confinement requires proof of a substantial interference with a person's liberty without the person's consent. Intimidation, on the other hand, requires proof of the communication of a threat with intent to induce conduct against the victim's will or to place the victim in fear of retaliation for a lawful act. The statutes defining the offenses require proof of different elements and it is possible to commit one without committing the other. Accordingly, convictions under both statutes are not, without a charging jeopardy violation, violative of double jeopardy.

■ In the present case, Lyles confined Gray by blocking any way of escape from his presence. The offense was aggravated by his possession of a deadly weapon during the confinement. While continuing to block Gray's escape, Lyles also threatened her with violence because of her lawful prior act of reporting him to the police. Lyles committed, and was charged with, two separate offenses.

We note the dissent claims allowing both the confinement and battery charges to stand violates double jeopardy requirements. We disagree.

■ The offenses of confinement and battery require proof of separate elements. Confinement requires proof of a substantial interference with a person's liberty without the person's consent. It is a class B felony if it is committed while the wrongdoer is armed with a deadly weapon or a serious injury results from the confinement. IC 35–42–3–3; *McDonald v. State* (1987), Ind., 511 N.E.2d 1066, 1069. Battery, on the other hand, requires a knowing or intentional touching of another person in a rude, insolent, or angry manner. Battery is a class C felony if it results in serious bodily injury to another person, or if it is committed by means of a deadly weapon.

IC 35–42–2–1. It is apparent then, that an evaluation and comparison of the statutory provisions does not yield a violation of double jeopardy.

Analysis does not stop here, however, for the supreme court precedents discussed above require an examination of the offenses as charged. The factual basis for the enhanced confinement charge was Lyles' attempt, while armed with a knife, to block the victim's exit. The charge was not based upon the subsequent injuries to the victim. The factual basis for the enhanced battery charge was Lyles' use of the knife upon the victim's body. The two charges were not based on the same offense. Lyles prevented the victim from leaving the bathroom initially by blocking escape with his body, and then by holding the knife in front of her. He then committed the offense of battery by using the knife to cut the victim. The fact that the confinement while holding the deadly weapon was only momentary is of no import. Therefore, there was no violation of charging jeopardy.[4]

For the foregoing reasons, we remand with instructions for the trial court to vacate the conviction and sentence for intimidation as a class C felony and to enter a conviction and sentence for intimidation as a class D felony. We affirm on all other issues.

GARRARD, J., concurs.

MILLER, J., dissents with separate opinion.

MILLER, Judge, dissenting.

I respectfully disagree with the majority's conclusion that it was proper to convict Lyles on both the confinement and the battery charges. The facts before us establish that the confinement while armed with a deadly weapon did not last any longer than was necessary to commit the battery by slashing the victim with the knife. *See Ryle v. State* (1990), Ind.App., 549 N.E.2d 81. *See also Wethington v. State* (1990), Ind., 560 N.E.2d 496.

The majority states there is a conflict between the districts of this court on the issue of double jeopardy which prompted them to look to our supreme court for guidance. However, the majority has overlooked *Wethington*, in which our supreme court held that, when the force used to accomplish a crime such as robbery is coextensive with alleged acts that violate the confinement statute, conviction on both counts would violate the prohibition against double jeopardy. *Wethington, supra.* In *Wethington*, our supreme court adopted the reasoning of *Ryle* and cited it extensively.

In *Ryle*, Judge Shields explained that when a robbery is committed by force or a threat of force, confinement also occurs by virtue of the use of force because the force or threat of force needed for the robbery inherently causes a substantial interference with the victim's liberty (which is required for confinement). The confinement statute will only be violated when the confinement of the victim continues beyond that inherent in the force necessary to effectuate the robbery. *Ryle, supra.* Judge Shields reasoned that the same is true of forcible rape which "necessarily includes an interference with the victim's liberty in order to achieve non-consensual penetration...." *Id.* at 85, n. 7.

The same reasoning applies here. By using force, Lyles confined Gray while cutting her with the knife. Gray was confined throughout the incident; however, the confinement while armed with a deadly weapon (which was the offense charged) did not begin until Lyles grabbed Gray an instant before he began cutting her with the knife.[1]

---

4. We find this case to be more like *Jones v. State* (1988), Ind., 518 N.E.2d 479, and similar cases, than to the cases cited by the dissent.

1. There was a moment between the time the confinement while armed began, and the time that the battery was committed using the knife. However, I cannot say that such a short time is sufficient to allow a conviction on both charges. The majority's affirmance of the conviction on both charges, in effect, means that the use of the knife on the upswing constituted the offense of confinement while armed and the knifing on the downswing constituted the separate offense

.There is no evidence that the confinement while armed with a deadly weapon continued beyond that which was necessary to effectuate the battery with a deadly weapon. Therefore, a separate violation of the confinement statute did not occur and I would vacate Lyles' conviction and sentence for confinement, Class B felony.

of battery with a deadly weapon. I respectfully suggest that such is an untenable position.

As noted earlier, the merger problems between confinement and battery are similar to those between confinement and 'rape. In crimes such as rape, confinement is necessary to effectuate the offense and the confinement necessarily begins shortly before the target of-

fense. However, these actions are not severable and the confinement is no more than is necessary to commit the target offense. *See Ryle v. State* (1990), Ind.App., 549 N.E.2d 81. Therefore, under the facts of this case, Lyles cannot be convicted of both confinement while armed with a deadly weapon and battery committed by means of a deadly weapon.