**Daryle R. RYLE, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

**No. 49A02–8811–CR–00435.**

Court of Appeals of Indiana,
Second District.

Jan. 31, 1990.

Transfer Denied April 16, 1990.

Kenneth T. Roberts and Kevin L. Scionti, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. and Amy Schaeffer Good, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

SHIELDS, Presiding Judge.

Daryle R. Ryle appeals his convictions of robbery [1] and two counts of confinement,[2] all class B felonies.

We affirm in part and reverse in part.

## ISSUES

We restate Ryle's assertions of error as:

I. Whether the trial court abused its discretion in allowing the State to ask a leading question of Wayne Reynolds.

II. Whether the evidence is sufficient to support Ryle's convictions.

III. Whether it was fundamental error for the trial court to enter convictions of both count I and count II.

## FACTS

On April 6, 1987, Donna Anderson was grabbed by Wayne Reynolds while she was working at a local restaurant. He pointed a gun at her and ordered her to take him to the restaurant manager. As they reached the manager's office Ryle ran past Anderson and Reynolds into the office. Ryle pointed a gun at the manager, Fakhr Joseph, and ordered him to open the safe. After some discussion, and with Reynolds holding Anderson, Joseph opened the safe.

Ryle and Reynolds took a bank bag of invoices and two boxes containing twenty-five dollars in pennies. As Reynolds and Ryle exited the restaurant, Joseph chased them with a broom. He struck Ryle and caused him to drop the boxes of pennies in

---

1. IC 35–42–5–1 (1988).

2. IC 35–42–3–3(a)(1) (1988).

the restaurant parking lot. In the meantime, Anderson phoned the police; they arrived before she hung up the phone.

Officer Raymond Brink spotted Ryle running into an apartment complex behind the restaurant. The officer gave chase and apprehended Ryle when Ryle collapsed. The officer recovered the bank bag from the ground about four feet from where Ryle lay. Reynolds was apprehended by Officer Michael Aten. Both suspects were held while Anderson and Joseph were brought to identify them. Both identified Reynolds and Ryle as the perpetrators. Charges were initiated against Reynolds and Ryle for robbing Fakhr Joseph (count I), for confining him (count II), and for confining Donna Anderson (count III). Ryle appeals his conviction of all three charges.

## DISCUSSION

### I.

■ Ryle argues the trial court erred in failing to sustain his objection to "the State's leading question to the witness ... Wayne Reynolds that was stated by the Prosecutor as follows: 'You pled guilty to confinement of Donna Anderson and.... [Fakhr] Joseph?'" Appellant's Brief at 16.

This asserted error is waived. Ryle failed to make the required contemporaneous objection. *Kirby v. State* (1985), Ind., 481 N.E.2d 372; *Wilson v. State* (1989), Ind.App., 536 N.E.2d 1037.[3]

### II.

### A.

■ Ryle argues the evidence is insufficient to establish his identity as Reynolds's accomplice in the commission of the robbery and confinements. In support of his contention Ryle cites conflicts between Anderson's and Joseph's testimony which call into question their ability to identify the robber. The weight and credit afforded the witnesses' testimony and the resolu-

tion of the conflicts between their testimony and the inconsistencies within their own testimony is exclusively the function of the fact finder and one with which this court will not interfere. *Shippen v. State* (1985), Ind., 477 N.E.2d 903, 904. In no event do the cited conflicts in the witnesses' testimony render it so incredibly dubious or inherently improbable that no reasonable person could believe it.

■ The evidence is Joseph and Anderson were able to see both perpetrators and identified Ryle and Reynolds after their apprehension within minutes of the robbery. The stolen bank bag was found only four feet from where Ryle collapsed after he attempted to flee Officer Brink. This evidence, along with Anderson's and Joseph's testimony describing their assailants' actions in the restaurant, is sufficient to establish Ryle actively participated in the commission of the charged crimes.

### B.

■ Ryle next argues the evidence is insufficient to establish he confined Fakhr Joseph as charged in count II of the information. That count alleges Wayne M. Reynolds and Daryle R. Ryle

> did, while armed with a deadly weapon, to-wit: A HANDGUN unlawfully and knowingly confine FAKHR JOSEPH without his consent by PLACING SAID HANDGUN AGAINST THE HEAD OF FAKHR JOSEPH, FORCING HIM TO REMAIN INSIDE A BUSINESS LOCATED AT 3560 NORTH LAFAYETTE ROAD....

Record at 3. Ryle argues there is insufficient evidence to establish he forced Joseph to remain inside the business because there is no evidence Joseph ever attempted to leave the premises during the incident.

The relevant portion of the confinement statute under which Ryle was charged states:

> A person who knowingly or intentionally:
>     (1) confines another person without the other person's consent ... commits

**3.** In any event, the same evidence was received, without objection, and, therefore, any error

would be harmless.

criminal confinement, a Class D felony.... [T]he offense is ... a Class B felony if it is committed while armed with a deadly weapon....

IC 35–42–3–3(a)(1) (1989 Supp.). The information charges the necessary elements in that it states Ryle confined Joseph without his consent. IC 35–42–3–1 (1988) defines "confine" as "to substantially interfere with the liberty of a person." The language in the information which charges Joseph was "forced to remain" is surplusage. The evidence supports the determination Joseph's liberty was substantially interfered with when, at gunpoint, he was forced to open the safe and give its contents to Ryle.[4]

### III.

■ Nevertheless, the trial court erred in entering a judgment of conviction and sentence on both counts I and II. Count I charged Ryle with robbing Joseph while count II charged him with confining Joseph.

4. Our supreme court has endorsed the reasoning of *Sammons v. State* (1980), Ind.App., 397 N.E.2d 289, that while "time may be a factor, it is the type or nature of the interference that is most significant." *Id.* at 294. *See Edwards v. State* (1985), Ind., 479 N.E.2d 541, 545 (substantial interference held to exist resulting from defendant's act of holding victims at knifepoint during failed attempts to rape them).

In the legal sense there may be "confinement of the person" not only by locking him in the public jail or in a private house, or in the stocks, but "even by forcibly detaining one in the public streets." One is not "confined" merely because he is prevented from going in some one direction, or in several directions, so long as he may freely depart by some other known way; but he may be confined either by being restrained by physical barriers or physical force, or by being subjected to threats of physical force or an asserted authority to which he submits.

R. Perkins, *Criminal Law* 172 (2d ed. 1969).

5. Robbery requires that the taking be done by means of violence or intimidation. Larceny from the person or presence of the victim is not robbery without this added element of force or fear.

.... The great weight of authority, however, supports the view that there is not sufficient force to constitute robbery when the thief snatches property from the owner's grasp so suddenly that the owner cannot offer any resistance to the taking. On the other

The elements of robbery defined by the statute under which Ryle was charged are knowingly or intentionally taking property from the presence of another person (1) by using or threatening the use of force on any person, or (2) by putting any person in fear. IC 35–42–5–1 (1988). Necessarily or inherently included offenses are those which must first be committed in order to commit the greater offense. *See, e.g., West v. State* (1950), 228 Ind. 431, 92 N.E.2d 852 (rape requires the commission of battery); *Hitch v. State* (1972), 259 Ind. 1, 284 N.E.2d 783 (robbery includes theft). If property is taken from a person or from a person's presence by force, threat of force, or by placing the person in fear—i.e., where robbery is established—the element of force, whether actual, threatened, or constructive, constitutes the crime of confinement defined as a substantial interference with a person's liberty.[5]

In other words, force equals confinement, albeit brief. However, any confinement of the victim beyond that inherent in

hand, when the owner, aware of an impending snatching, resists it, or when, the thief's first attempt being ineffective to separate the owner from his property, a struggle for the property is necessary before the thief can get possession thereof, there is enough force to make the taking robbery. Taking the owner's property by stealthily picking his pocket is not taking by force and so is not robbery; but if the pickpocket or his confederate jostles the owner, or if the owner, catching the pickpocket in the act, struggles unsuccessfully to keep possession, the pickpocket's crime becomes robbery. To remove an article of value, attached to the owner's person or clothing, by a sudden snatching or by stealth is not robbery unless the article in question (e.g., an earring, pin or watch) is so attached to the person or his clothes as to require some force to effect its removal.

\*   \*   \*   \*   \*   \*

The elements of force and fear—of violence or intimidation—are alternatives: if there is force, there need be no fear, and *vice versa*. (Thus, all modern codes define robbery in terms of actual or threatened injury.)

\*   \*   \*   \*   \*   \*

.... There must be a causal connection between the defendant's threat of harm and his acquisition of the victim's property—that is, the threat must induce the victim to part with his property.

2 W. LaFave & A. Scott, *Substantive Criminal Law* 445–50 (1986) (footnotes omitted).

the force used to effectuate the robbery constitutes a violation of the confinement statute apart from the violation inherent in the offense of robbery. Further, confinement charged under IC 35–42–3–3(a)(2) (1988)[6] does not define the confinement necessary to commit robbery and by definition will constitute a distinct crime.

We are mindful of the fact that our supreme court has stated "the statutorily defined elements of confinement, Ind.Code 35–42–3–3(a), are clearly distinct from the elements of robbery." *Brim v. State* (1984), Ind. 471 N.E.2d 676. On more than one occasion the court has summoned the rule of statutory interpretation advanced in *Blockburger v. United States* (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 to sustain separate convictions of robbery and confinement over a defendant's claim of double jeopardy. *See, e.g., Brim; Gillie v. State* (1987), Ind., 512 N.E.2d 145; *Jones v. State* (1988), Ind., 518 N.E.2d 479. However, the facts in those cases did not require application of the *Blockburger* rule to defeat the defendant's claims. In *Brim, Gillie* and *Jones*, the victims were confined beyond that inherently included in the offense of robbery. In *Brim*, the victim was forced at gunpoint to move from behind a counter, lie on the floor, help open a cash drawer, and then again ordered to lie on the floor. In *Gillie*, the robber ordered one bank employee to lock the door and another to go into the vault and place mon-

ey in a sack. The robber subsequently ordered both employees to lie on the vault floor before he escaped. In *Jones*, the victims were ordered at gunpoint to lie on the floor and bound with duct tape.[7] In this case there was no such extraneous interference with Joseph's liberty.

We therefore remand to the trial court with instructions to vacate Ryle's conviction for confining Joseph as charged in count II; judgment is affirmed as to counts I and III.

CHEZEM and SULLIVAN, JJ., concur.

---

Our own review of Indiana decisions leads us to conclude they do not conflict with the majority views expressed above. *See, e.g., Maul v. State* (1984), Ind., 467 N.E.2d 1197 (where defendant's snatching of purse was forceful enough to cause the victim's whole arm to wrench backward, this was sufficient force to sustain robbery conviction); *Brennon v. State* (1865), 25 Ind. 403; *Shinn v. State* (1878), 64 Ind. 13 (the degree of force used in robbery must be more than would be necessary to take possession of the property if no resistance were offered); *Rowe v. State* (1986), Ind.App., 496 N.E.2d 585 (there must be a causal relationship between the act of placing the victim in fear and the victim's decision to surrender the property); *Alstatt v. State* (1983), Ind., 455 N.E.2d 323 (a person has to be in fear where a gun is pointed at him, whether or not he knows the gun is loaded).

6. A person who knowingly or intentionally:
   ....

(2) Removes another person, by ... force, or threat of force, from one (1) place to another; commits criminal confinement....

The element of removal is not inherent in the offense of robbery and thus robbery committed by means of forcing the victim to move from one place to another constitutes a separate offense. The facts of this case indicate Joseph was compelled by threat of force to go to the office safe and retrieve its contents; however, he was not charged with removal of the victim under IC 35–42–3–3(a)(2).

7. Similarly, forcible rape necessarily includes an interference with the victim's liberty in order to achieve non-consensual penetration. That interference, like the interference in the robbery, is inherently included in forcible rape and cannot support a conviction. However, any confinement of the victim other than that necessary to effectuate the rape constitutes a separate violation of IC 35–42–3–3(a)(1) and a distinct, punishable offense.