564 N.E.2d 542 (1990)
Leo L. SCROUGHAM, Appellant (Defendant below),
v.
STATE of Indiana, Appellee (Plaintiff below).
No. 49A04-9007-CR-355.
Court of Appeals of Indiana, Fourth District.
December 31, 1990.
Transfer Denied April 3, 1991.
*543 Reginald B. Bishop, Roberts & Bishop, Indianapolis, for appellant.
Linley E. Pearson, Atty. Gen., Ian A.T. McLean, Deputy Atty. Gen., Indianapolis for appellee.
CHEZEM, Judge.

Case Summary
Defendant-Appellant, Leo L. Scrougham, appeals from his convictions for Rape (class B felony), Sexual Battery (class D felony), and Confinement (class D felony). We affirm.

Issues
Defendant presents one (1) issue for our review, which we restate as follows:
Whether there was sufficient evidence to support the convictions for Rape, Sexual Battery, and Confinement.
In addition, State raises the question of "whether this case must be remanded for re-sentencing on the ground that Sexual Battery is a lesser-included offense of Rape."

Facts and Procedural History
At approximately 8:00 a.m. on July 7, 1989, D.T. went to visit her friend Dawn Crockett at the home of Defendant. Crockett was living there with Defendant's son, Harold Scrougham. D.T. went to the home that day to check on Dawn's health (she suffered a miscarriage several days earlier). D.T. entered without knocking or ringing the bell because they had told her to do so on prior occasions. With respect to the Defendant, D.T. thought of him "as a second father," and thought she "could trust him." D.T. was sixteen years old at this time.
Upon entering the home, D.T. called out for both Harold and Dawn. When they did not answer, D.T. called out for the Defendant. Defendant emerged from his bedroom, told D.T. that Harold and Dawn were not there, and asked D.T. to come into his bedroom so he could talk to her. D.T. went into the bedroom and sat on the bed, as requested by Defendant. Defendant then asked D.T. if she had ever had sex with anyone in her family, to which D.T. responded "no." While D.T. tried to ignore Defendant, he continued to ask questions about sex. He then stated "I haven't had any for six years since my wife died," and "I wish I had you once."
Defendant next instructed D.T. to reach under the corner of his mattress and retrieve some magazines. When she complied, D.T. discovered that they were "porno books." She immediately put them down and said she would not look at them because she "was brought up in a Christian home." Defendant then told D.T. to "reach down and feel his penis." D.T. refused, got up from the bed, and tried to leave. Defendant grabbed her, forced her back onto the bed, took her clothes off, and then he fondled and raped D.T. At first D.T. "tried getting away," "tried fighting him," and "tried biting him," but eventually she gave up because Defendant was hurting her. She was no match for Defendant, who weighed approximately 300 pounds at the time.
While Defendant was raping D.T., the telephone rang. Before he answered it, Defendant clamped his hand over D.T.'s mouth to keep her from screaming for help. After completing the telephone conversation, Defendant went to the bathroom and got dressed. D.T. grabbed her clothes *544 and went to the kitchen where she called her best friend Danielle Johnson. D.T. told Danielle that she "just got molested by Harold's dad." Harold and Dawn came home several minutes later, and Harold testified that "[it] [t]ook her like ten minutes before she stopped crying where she could talk, she was crying so hard, for her to tell." Defendant had already left the house by this time.
On July 21, 1989, the Marion County Prosecutor's Office filed an Information, which charged Defendant with Rape (class B felony), Sexual Battery (class D felony), and Confinement (class D felony). Defendant was found guilty of these charges at the conclusion of the jury trial on January 31, 1990.

Discussion and Decision

I
Defendant argues that "the State did not present sufficient evidence of probative value to prove [that] he committed the charged crimes." In particular, Defendant argues that "the convictions were based on the victim's testimony which was inherently unbelievable." As stated by Defendant:
[D.T.'s] testimony was disjointed and unbelievable. First it is unbelievable that a sixteen year old girl would sit on the bed of the father of her friend at 8:00 a.m. and discuss sex and not think anything about it. Additionally, it is unbelievable that after the alleged attack [D.T.] did not attempt to leave the house but instead called her friend. Even more incredible is the fact that after reporting the alleged rape to her teacher, [D.T.] returned to the SCROUGHAM home. Her reasoning that she returned because MR. SCROUGHAM was not there is further evidence of the incredible [sic] unbelievable nature of her testimony.
Additionally, it is unrealistic to believe that someone who has been raped would hang around the scene of the rape, call friends on the phone and then after leaving return to the crime scene to see friends.
We initially note that the convictions in this case appear to rest primarily upon the testimony of D.T. Nevertheless, the uncorroborated testimony of the victim is sufficient to sustain a criminal conviction. See, Ellis v. State (1988), Ind., 528 N.E.2d 60, 61; Jones v. State (1983), Ind., 445 N.E.2d 98, 100. In addition, the law is well-established that a court reviewing the sufficiency of the evidence will neither reweigh the evidence nor judge the credibility of witnesses. It is the jury's responsibility to determine whether testimony is contrived, and to generally judge the credibility of witnesses. Accordingly, we "will not in any way impinge on that responsibility unless confronted with `inherently improbable' testimony, or coerced, equivocal, wholly uncorroborated testimony of `incredible dubiosity.'" Bedwell v. State (1985), Ind., 481 N.E.2d 1090, 1092. We consider only the evidence most favorable to the verdict, together with all reasonable inferences to be drawn therefrom, and if there is evidence of probative value to support the verdict, it will not be disturbed. O'Connor v. State (1988), Ind., 529 N.E.2d 331, 332; Clark v. State (1987), Ind. App., 512 N.E.2d 223, 227.
Defendant first claims that "it is unbelievable that a sixteen year old girl would sit on the bed of the father of her friend at 8:00 a.m. and discuss sex and not think anything about it." With respect to this claim, Defendant has mischaracterized D.T.'s testimony and taken it out of context. He ignores the fact that D.T. was a friend of the family who was given liberal access to the household. In addition, he ignores the fact that D.T. "trust[ed] him," and thought of him "as a second father." When her testimony here is considered in proper context, it is not "unbelievable." D.T. went over to Defendant's house to check on the health of her friend Dawn. She went into the bedroom only at the request of Defendant, who said he had something to tell D.T. Once in the bedroom, D.T. did not "discuss sex" with Defendant. Instead, Defendant tried to get D.T. to discuss the subject, but she refused. D.T. testified that she felt uncomfortable and tried to ignore Defendant.
Defendant next claims that "it is unbelievable that after the alleged attack [D.T.] did not attempt to leave the house but instead called her friend." Once again, Defendant has failed to Provide the proper context of testimony at trial. He ignores *545 the fact that D.T. was not raped by a stranger; she was raped by her "second father." After an attack, one is more likely to flee from a stranger than a friend or relative. In addition, other than the rape itself, D.T. was not physically harmed by Defendant. She also knew the rape was over when Defendant went into the bathroom and got dressed. In other words, D.T. could have reasonably assumed that the danger to her was over for the moment. With respect to the fact that D.T. "called her friend," we note that she did so immediately after the rape. During that conversation, D.T. told her friend that she "just got molested by Harold's dad." Harold and Dawn then came home to find D.T. "crying so hard" it took her ten (10) minutes to stop. The testimony at trial established that Defendant had left the house by this time.
We next address the claim that "[e]ven more incredible is the fact that after reporting the alleged rape to her teacher, [D.T.] returned to the SCROUGHAM home." This testimony is not incredible or unbelievable. D.T. knew that Defendant would not be there when she returned. In addition, she sought the help of her friend Dawn, who assisted her in getting to St. Francis Hospital. Once at the hospital, D.T. called her family and told them about the rape. She initially did not want to involve the police because she had been raped before and knew what she would have to go through.
Lastly, Defendant argues that D.T.'s testimony about the rape is "unbelievable" because "[a]t trial the defense offered uncontroverted evidence from an unbiased witness which placed MR. SCROUGHAM in his vehicle at the time of the alleged rape." This is a misrepresentation of the record. First, the witness in question was not necessarily "unbiased," as she had been a friend of Defendant's family for approximately twenty-five (25) years. Second, the witness' testimony did not conclusively establish that Defendant was in his car when the rape allegedly occurred. The witness testified that she called Defendant at approximately 7:55 a.m. and requested that he come over and give one of her tenants a ride so she could obtain food stamps. She testified that the trip to her place would take Defendant between fifteen (15) to thirty (30) minutes, depending on traffic conditions. He arrived there at 8:21 a.m. On the other hand, D.T. testified on cross-examination that she arrived at Defendant's house between 7:40 a.m. and 8:00 a.m. Upon arrival, she immediately went into the bedroom at the request of Defendant. The rape occurred shortly thereafter, and terminated when the telephone rang. Defendant left the house a few minutes later.
Therefore, when we consider the evidence most favorable to the verdict, together with all reasonable inferences to be drawn therefrom, we cannot say that D.T.'s testimony was "unbelievable" or "inherently improbable." We hold the evidence sufficient.

II
We next consider the issue raised by the State  "whether this case must be remanded for re-sentencing on the ground that Sexual Battery is a lesser-included offense of Rape." In essence, was it proper to convict Defendant of both Rape and Sexual Battery, and for the trial court to impose separate sentences thereon? The question raises concerns as to Article 1, § 14 of the Indiana Constitution, as well as the Double Jeopardy Clause of the Fifth Amendment, which together protect against multiple punishments for the same offense.
To determine whether offenses are the same under the Double Jeopardy Clause, the following standard has been established:
The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.
Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). This test or standard was further refined or developed in Brown v. Ohio, 432 *546 U.S. 161, 166, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187 (1977), as follows:
This test emphasizes the elements of the two crimes. `If each requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes ...' [Citation omitted.]
The test set forth in Blockburger and further developed in Brown has been adopted in Indiana. Justice Pivarnik, writing for the Indiana Supreme Court in Elmore v. State (1978), 269 Ind. 532, 382 N.E.2d 893, 897, stated as follows:
The focus of a proper double jeopardy analysis must be on whether or not the offenses to be prosecuted and punished are the same, and not whether the offenses spring from the same act or operative circumstances. The inquiry into whether the offenses stem from the same act is merely the first step in the analysis. If the offenses are premised upon different acts, the problem is not so great. But where they do arise from the same act, we must proceed to determine whether the offenses charged are themselves the same, for the Double Jeopardy Clause was written in terms of the `same offense,' not the same act. In other words, the fact that the offenses stem from the same act merely informs us that there is a potential problem; it is not a solution to the problem. The ultimate focus is on the identity of their source.
See also, Riding v. State (1988), Ind. App., 527 N.E.2d 185, 188-189; Whittle v. State (1989), Ind., 542 N.E.2d 981, 992.
The definition and elements of Rape are set forth in I.C. XX-XX-X-X. Under this statute, the State had to prove at trial that Defendant "knowingly or intentionally ha[d] sexual intercourse with [D.T.]," and that D.T. was "compelled by force or imminent threat of force" to submit to the Rape. With respect to Sexual Battery, the pertinent statute is I.C. XX-XX-X-X. There, the State had to prove that Defendant, "with [the] intent to arouse or satisfy [his] own sexual desires or the sexual desires of [D.T.], touche[d] [D.T.] when [she was] compelled to submit to the touching by force or the imminent threat of force."
Even a cursory review of the pertinent statutes reveals that each crime contains an element which the other does not. Rape requires sexual intercourse or penetration, which is not required for Sexual Battery. Of course, there is sufficient evidence of penetration in this case. D.T. testified at trial that Defendant stuck his penis "[i]n my vagina."
On the other hand, Sexual Battery requires a touching with the intent to arouse or satisfy one's own sexual desires or those of his victim, which is not required for Rape. D.T. testified that in addition to the penetration, Defendant also touched her by "playing with my breasts." Defendant also stated at one point that "this feels good."
In addition, we must look to the manner in which the offenses are charged in applying the Blockburger test. See, Tawney v. State (1982), Ind., 439 N.E.2d 582, 588. Count I alleged that Defendant "did knowingly or intentionally have sexual intercourse with [D.T.] ... when [she] was compelled by force or imminent threat of force." Count II alleged that Defendant "did, with intent to arouse or satisfy his own sexual desires, touch [D.T.] when [she] was compelled by force or the imminent threat of force to submit to the touching." Therefore, the charges in question closely parallel the language of the pertinent statutes, and each requires proof which the other does not.
Based on the foregoing, we conclude it was proper not only to convict Defendant of both Rape and Sexual Battery, but also for the trial court to impose separate sentences on these convictions. In other words, Sexual Battery is not a lesser included offense of Rape.
Affirmed.
HOFFMAN, P.J., concurs.
MILLER, P.J., dissents with opinion.
*547 MILLER, Presiding Judge, dissenting.
I respectfully dissent on Issue II. The majority concludes that it was proper to sentence Scrougham for three crimes  confinement, sexual battery, and rape  arising out of the same sexual assault. The issue here  raised by the State  is whether sexual battery, Ind. Code 35-42-4-8, enacted by P.L. 322-1987, is a lesser included offense of the crime of rape and, therefore, precludes a court from convicting and sentencing for both offenses. However, although neither the State nor defendant raised the issue, it is apparent on the face of the record that the sentence for confinement was also improper. In this case, there was one act of rape. The confinement of the victim was no longer than that necessary to commit the rape and the sexual battery consisted of fondling of the victim as a part of the force used in the rape. Under these circumstances, it was improper to sentence Scrougham for three separate crimes  two of which were necessarily included in the same act of rape. I would remand to the trial court for resentencing and order the court to vacate the convictions for confinement and sexual battery.
As the majority points out, it is apparent that the statutory definitions of the crime of rape and the crime of sexual battery each contain an element which the other crime does not. The rape statute contains the element of nonconsensual sexual intercourse and sexual battery does not; the sexual battery charge contains by definition an element not found in rape  a touching with intent to arouse or gratify. However, while the crime of rape is an act of violence, at its most basic level the act inherently involves a touching with an intent to arouse or obtain sexual gratification. Penetration is, of course, a touching. Hawk v. State (1987), Ind. App., 506 N.E.2d 71.[1] Evidence of the intentional touching of a victim's genital area justifies an inference that the perpetrator acted with an intent to arouse or gratify sexual desires. Hammond v. State (1985), Ind. App., 479 N.E.2d 629. The very nature of the act of rape involves arousal, sexual excitement, or gratification.[2] During a rape, the perpetrator *548 necessarily interferes with his victim's liberty (confinement) and engages in fondling or touching of the victim during the act (sexual battery). The inclusion of language requiring an intent to arouse or gratify sexual desires is necessary in the fondling charge under the child molest statute and in the sexual battery statute to prevent the criminalization of accidental touchings. However, in rape (or sexual intercourse under the child molest statute), it is not necessary to require that the conduct must be committed with an intent to gratify because the intent is necessarily inferred from the act. Thus, confinement and sexual battery, while by the statutory definition are not included offenses, may be factually included in the greater offense of rape[3] because it is physically impossible to commit forcible rape without also first confining the victim and at some point touching the victim with an intent to obtain sexual gratification.
Our Penal Code is founded on the principles of reformation, and not vindictive justice. I.L.E. Criminal Law 5; Const. Art. 1, § 18. Only the legislature has the power to pass statutes defining and fixing the penalties for crimes. Durrett v. State (1966), 247 Ind. 692, 219 N.E.2d 814. In determining a punishment for the crime of rape, the legislature considered the nature of the act and set the punishment accordingly. By concluding, as the majority does under the facts of this case, that sexual battery and confinement are not lesser included offenses in the crime of rape, a defendant in every rape case may be convicted and sentenced separately for the offenses of confinement, sexual battery and rape. By construing our statutes so that the crime of rape may support three separate convictions, this court is invading the province of the legislature by setting additional penalties for rape. In other words, the majority here is "legislating" under the guise of "statutory construction."
The double jeopardy clause of the Fifth Amendment protects against multiple punishment for the same offense. North Carolina v. Pearce (1969), 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656; Wethington v. State (1990), Ind., 560 N.E.2d 496; Sering v. State (1986), Ind. App., 488 N.E.2d 369. As Judge Shields observed in writing for the majority in Sering, absent clearly expressed legislative intent to punish the same offense under two different statutes, the court may not substitute a greater punishment than the legislature mandated. "Two offenses are the same for the purpose of double jeopardy when the same act constitutes a violation of two distinct statutory provisions which do not require proof of an additional fact." Wethington, supra, at 506. However, double jeopardy analysis does not end with an evaluation and comparison of the statutes, but requires a further examination of the factual bases alleged by the State in the information or indictment. Id.
Cumulative convictions and punishments are also prohibited where defendants are convicted of both greater and lesser included offenses by IC XX-XX-X-XX. An "included offense" is defined by the statute as an offense that:
"1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;
2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or

*549 3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability is required to establish its commission."
A credible argument could be made that sexual battery is an included offense of rape under clause three of the above statute. The harm in both rape and sexual battery is the same in one respect: the violation of the sexual integrity of the person. Although sexual battery is a serious harm, it is a lesser harm to the sexual integrity of the person than the harm accomplished by forcible rape. See, Hawk, supra at 75-76, Shields, J., concurring, in regard to intercourse and fondling under the child molest statute. Moreover, necessarily or inherently included offenses are those which must first be committed in order to commit the greater offense. Ryle v. State (1990), Ind. App., 549 N.E.2d 81, citing West v. State (1950), 228 Ind. 431, 92 N.E.2d 852 (rape requires the commission of battery) and Hitch v. State (1972), 259 Ind. 1, 284 N.E.2d 783 (robbery includes theft). Here, although it is possible to commit sexual battery and confinement without committing or attempting to commit rape, it is impossible to commit rape without first committing the two other crimes.
In Wethington, supra, the defendant was convicted and sentenced for confinement and robbery when he took $120.00 in cash and a small quantity of marijuana from his victims. The charging information for the robbery count contained a particularized description of the force used on the victims to commit the robbery, i.e., he bound the victims, forced them to lie on the floor, covered them with a blanket and poured gasoline around the area where the victims lay. The confinement count contained the identical description for the means of confinement. The court found that the language of the charging instruments made it evident that "the factual basis underlying the criminal confinement charge was the same conduct alleged by the State to establish the `by force' element necessary to support its charge of robbery, in other words, that the confinement was the force by which appellant effectuated the robbery." Id. at 507. The court cited with approval Ryle, supra, in which the Ryle court reversed one of the Ryle's convictions for criminal confinement where the confinement was the force used to commit a robbery. The Wethington court held that, as in Ryle, since "the acts alleged by the State to substantiate a necessary element of the robbery charge, i.e., the force that was used to effectuate the taking, are precisely coextensive with the acts alleged as constituting a violation of the criminal confinement statute, the convictions on both counts cannot stand." 560 N.E.2d at 508.
In the present case, the pertinent part of the information for the three counts reads as as follows:
Count I  did knowingly or intentionally have sexual intercourse with D.T., a member of the opposite sex, when D.T. was compelled by force or imminent threat of force ...
Count II  did, with intent to arouse or satisfy his own sexual desires, touch D.T. when D.T. was compelled by force or the imminent threat of force to submit to touching ...
Count III  did knowingly and intentionally confine D.T. without her consent by forcing her to remain inside a residence located at 2912 South Beech Street. (R. 2)
The Wethington information contained a particularized description which was identical in both the confinement count and the robbery count. Although the charging information in the present case does not contain the same particularized facts in each count, this is a distinction without a difference. Here, there was one act of rape during a short span of time. As, in Ryle and Wethington, Scrougham confined the victim at the residence only for the period of time necessary to commit the act of rape and the fondling of the victim was incidental to and a part of the act of rape. In other words, the force that was used to commit the rape in count I is coextensive with the act of confinement in count III *550 and the sexual battery in count II. See, Owens v. State (1989), Ind. App., 543 N.E.2d 673 (where charges are based on the same conduct, same harm to victim, over same short span of time, one conviction must fall). While there may be instances in which convictions for confinement, sexual battery and rape may be proper, under the facts of this case it is not.
I would reverse and vacate the sentences for sexual battery and confinement.
NOTES
[1] In Hawk, supra, this court held that under the child molestation statute, fondling or touching a child with intent to arouse or to satisfy sexual desires of either the party or the child (IC XX-XX-X-X(b)) is not a lesser included offense in sexual intercourse with a child (IC XX-XX-X-X(a), under 12, and IC XX-XX-X-X(c), over 12, but under the age of 16). However, the Hawk court specifically refrained from addressing the double jeopardy and statutory problems that would arise if a conviction for both sexual intercourse and a touching or fondling occurred, particularly where evidence reveals only one touching occurred. The court also did not address to what degree the acts must be temporally separated for convictions for both to be sustainable. 506 N.E.2d at 75, n. 6.
[2] "Sexual intercourse" is defined by statute as "[A]n act that includes any penetration of the female sex organ by the male sex organ." IC XX-XX-X-XX. Although the statutory definition does not include an intent to gratify, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2082 (Rev. 1976) defines "sexual" as "relating to the sphere of behavior associated with libidinal gratification"  in other words, sexual gratification.

I also point out that in Canaan v. State (1989), Ind., 541 N.E.2d 894, our supreme court opined that the legislature had reacted to a current theory that rape and other types of sexual attacks are not crimes of passion or sexual gratification, but rather, crimes of violence. The court was specifically addressing the fact that the definition of deviate sexual conduct (formerly IC XX-XX-X-X) which required "an act of sexual gratification involving the sex organ of one person and the mouth or anus of another person" was subsequently revised (now IC XX-XX-X-X) and no longer requires proof of sexual gratification. I agree that the acts of forcible rape and forcible deviate sexual conduct are acts of violence. However, I also observe that when the statute was changed by P.L. 183-1984, "sexual gratification" was eliminated from the definition, but subdivision 2 was added, including in the definition of deviate sexual conduct "the penetration of the sex organ or anus of a person by an object." West's AIC XX-XX-X-X (1986). The legislature may have added this subdivision to include as deviate sexual conduct acts of abuse which do not necessarily stem from an intent to arouse or gratify. Thus, the elimination of the words "sexual gratification" from the statute is not necessarily indicative of the legislature's intent with respect to all crimes of a sexual nature.
Furthermore, all crimes involving force against the person are acts of violence. For example, robbery is theft from the person or presence of another person by the use of force or threats of force. IC XX-XX-X-X. In robbery, although the statute only requires that the robber knowingly take property from the victim, it is necessarily implied that the robber's intent is to steal. Similarly, while rape is a crime of violence, it is also a crime involving sexual gratification.
[3] For example, Indiana courts have repeatedly held that confinement is not an inherently included offense in rape. (See e.g., Purter v. State (1987), Ind., 515 N.E.2d 858; Edwards v. State (1985), Ind., 479 N.E.2d 541. In both Edwards and Purter, the victims were confined prior to or after the rape and the confinement was not merely incidental to the rape.) I agree with Judge Shields' well-reasoned analysis in Ryle v. State (1990), Ind. App., 549 N.E.2d 81, 85 n. 7: "[F]orcible rape necessarily includes an interference, with the victim's liberty in order to achieve non-consensual penetration. That interference, like the interference in the robbery, is inherently included in forcible rape and cannot support a conviction. However, any confinement of the victim other than that necessary to effectuate the rape constitutes a separate violation of IC XX-XX-X-X(a)(1) and a distinct, punishable offense."