**Maurice HARRIS, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

**No. 49A02–9302–PC–50.[1]**

Court of Appeals of Indiana, First District.

June 22, 1993.

Transfer Denied Aug. 3, 1993.

---

1. This case was transferred to this office May 25, 1993 by direction of the Chief Judge.

27

Susan K. Carpenter, Public Defender, Ann M. Skinner, Deputy Public Defender, Indianapolis, for appellant-petitioner.

Pamela Carter, Atty. Gen., Julie Zandstra Frazee, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-respondent.

ROBERTSON, Judge.

Maurice Harris appeals the denial of his petition for post-conviction relief from his convictions of three counts of robbery, class C felonies, three counts of confinement, class C felonies, and one count of confinement, a class D felony.

We affirm.

On the afternoon of February 25, 1989, Harris entered the Child Life Library at Riley Children's Hospital wearing a black trash bag with eye openings and his right hand tucked under his shirt. He demanded money from the librarian and escorted her to another room where she gave him change from her purse. Harris then returned to the main room of the library and robbed two women. He then motioned all

of the room's occupants, parents of and children who were seriously ill, to the back of the library and ordered them to lie down. As the librarian passed the area where a father and his son were playing video games, she communicated to them Harris' order. While the librarian was unhooking the video cassette recorder as Harris had instructed, Harris robbed the adult male of his wallet. The State charged Harris with ten separate offenses arising from the incident: three counts of robbery, each a class B felony, and seven counts of confinement, each also a class B felony.

Harris pled guilty to seven of the ten counts pursuant to a written plea agreement in which the State agreed to make no recommendation as to sentencing. At the guilty plea hearing, the court advised Harris that for each class C felony the maximum sentence could be up to eight years in prison "[a]nd with 6 Class C felonies that could be up to 48 years ..., to which [he] could add the maximum on the Class D felony of an additional 4 years ... So the maximum would be 52 years ..." The court also advised Harris of the presumptive and minimum sentences for each offense. He then asked Harris whether he understood that at the time of sentencing, the court "will consider any prior criminal history you have including a juvenile record if you have one, Mr. Harris?" Harris acknowledged that he understood.

■ Harris argues in this appeal that his plea of guilty to the seven counts was not intelligently and voluntarily entered because the court failed to advise him specifically of the possibility of a consecutive and enhanced sentence due to the presence of a prior conviction. To obtain relief on this claim, Harris must demonstrate by a preponderance of the evidence that the trial judge failed to give one of the statutory advisements and establish facts from which the trier of fact could conclude that the judge's omission rendered the decision to plead guilty involuntary and unintelligent. *Garrett v. State* (1986), Ind., 499 N.E.2d 1121, 1122.

■ Indiana Code 35–35–1–2(a)(3) provides that the court shall not accept a plea of guilty without first determining that the defendant has been informed of "any possible increased sentence by reason of the fact of a prior conviction or convictions ..." The purpose of this advisement is to ensure that the accused is aware of the range of penalties which could be imposed prior to pleading guilty. *Garrett*, 499 N.E.2d at 1123; *Underhill v. State* (1985), Ind., 477 N.E.2d 284, 287.

■ Harris has established that he did not obtain the specific advisement required by statute. He was advised of the range of penalties and the fact that his prior criminal conviction could be considered in sentencing. The court also explained to Harris by example, that the eight-year sentences on each of the six class C felony counts could be ordered served consecutively to each other and that the maximum sentence of four years on the class D felony count could be added to the others for a total of 52 years. However, Harris was not told by the court that his prior conviction could be a reason for the "possible increased sentence."

Nonetheless, Harris must prove by a preponderance of the evidence that a proper advisement "of a possible increased sentence" due to his prior conviction would have affected his decision to plead guilty. He has not met this burden. Harris testified at his post-conviction hearing that he was motivated to plead guilty because he "had never hurt anyone, especially any kids" and he wanted to go on and get it over without taking the kids through any more pain. He stated that he "expected" less than 48 years because he was told he would not get more than 10 or 12 years, and that 15 years was too much. He believed (at the post-conviction hearing) that he would now be better off going to trial.

Harris does not state that had he known that his sentence could be increased by reason of his prior conviction that he would not have plead guilty, only that he did not expect to receive the forty-eight year sentence because of what he had been told. When asked whether he was advised of the

possibility that the sentences could run consecutively to each other, he said he did not remember, no. Yet, the transcript of the change of plea hearing establishes that Harris was informed that the sentence on each count could be ordered to be served consecutively for a total of fifty-two years.

Harris points to statements made by the probation officer in the presentence investigation report which he says establishes his confusion over the possible sentence which could be imposed for his offenses. While the presentence report may establish that Harris was confused over the possible sentence which he could receive, an inference which is refuted by statements attributed to Harris in the update to the presentence report, the report does not establish that Harris was mistaken about the role of his prior conviction in sentencing or that his decision would have been different had he been properly advised. Accordingly, we conclude that Harris was properly denied relief upon this issue.

■ Harris argues next that he was denied fundamental due process and due course of law by the use at sentencing of a presentence report which was biased, inaccurate, and inflammatory. He directs us first, to the statement made in the report that "[t]he defendant has no juvenile history in Marion County, Indiana. However, he was raised in Birmingham, Alabama." Harris maintains that this statement created the misimpression that he had a juvenile history in Alabama when, in fact, he did not and that the statement prejudiced him because his criminal history was used as an aggravator at sentencing.

The probation officer's statement could only have created the misimpression envisioned by Harris if it was read in isolation from the rest of the report. The probation officer plainly stated later on in the report that she was unable to locate a criminal history anywhere but in Indianapolis, Indiana. The absence of any history as a juvenile offender is also established by the listing of arrests and offenses and their respective dates of commission. The likelihood that Harris' history as a juvenile was misconstrued is thus remote at best.

Harris points to other matters which he maintains were erroneously included: the fact that he had been divorced twice, that he argued with the probation officer over the possible sentence which could be imposed, and her conclusion that he had failed to show remorse for the victims. Indiana Code 35–38–1–9 authorizes the inclusion of a convicted person's social history and family situation and any matters which the probation officer conducting the investigation believes is relevant to the question of sentence. This would include significant relationships with other people and their duration, and the defendant's evaluation of his criminal behavior. We note that while one probation officer had the impression that Harris was not remorseful for his crime, a second reported that Harris was indeed sorry for his crime but did not believe himself to be a bad person.

Be that as it may, Harris has failed to establish how he was prejudiced by these matters. The court did not cite any of these matters as reasons for aggravating Harris' sentence and there is no indication in the record that the enhanced, consecutive sentences were in any way a result of the inclusion of these matters. *Cf. Brooks v. State* (1990), Ind.App., 555 N.E.2d 1348.

■ Harris next contends that the State violated the terms of its plea agreement by recommending the maximum sentence through the presentence report. The probation officer who prepared the report included within the section incorporating the victims' views a statement from the deputy prosecutor that the case was pitiful and that all of the victims had expressed the view that they wanted to see the defendant receive the maximum executed sentence. The update to the presentence report, which was prepared by another investigator, indicates that all but one of the victims believed Harris should receive the maximum sentence. The other felt the matter of sentencing should be left to the judge's discretion. Four of the seven victims testified at sentencing and opined that Harris ought to receive the maximum sentence.

The prosecutor's statement to the probation officer, while perhaps overbroad, is independently supported by the statements of the victims themselves. The court thus had ample evidence that the recommendation of the maximum sentence was not that of the prosecution, but the victims, and not a breach of the plea agreement.

Harris maintains he received ineffective assistance of counsel in these proceedings. He presented evidence on his petition for post-conviction relief from the attorney who represented him through sentencing tending to show that the attorney was in extremely poor health and not functioning at his usual level of performance. Harris points specifically to his counsel's failure to object to the contents of the presentence investigation report, a matter which we have already discussed and found not to be prejudicial; counsel's failure to object to the State's breach of his plea agreement, a breach which we have already determined Harris has not proven; counsel's failure to investigate certain discrepancies between the probable cause affidavit and the information, resulting in a charge in violation of double jeopardy; and finally, that counsel was ineffective for failing to present mitigating evidence on Harris' behalf. We will address only the latter two allegations of unprofessional performance.

The gist of Harris' double jeopardy complaint is his assertion that, had his counsel investigated in greater depth the factual basis for the counts of confinement involving the father and son, counsel would have discovered that the charges were based upon the same underlying circumstances as the robbery and that the force used upon father and son was no greater than was necessary to effectuate the robbery. It is not clear from the probable cause affidavit the order in which events occurred with respect to the father and son pair. But, this ambiguity was cleared up at Harris' change of plea hearing when he admitted that after he had obtained money from the two female adults, he ordered everyone to the back of the room and to lie on the floor. "At that time all the persons in the library, the three parents and their three children and [the librarian], did go to the back of the room and lay on the floor." Harris instructed the librarian to unhook the video cassette recorder. While she was doing so, Harris demanded Mr. Flick's wallet.

More importantly, while the evidence offered at the change of plea hearing establishes that Harris had a different version of the events which transpired in the library, he has not offered any evidence which would establish that, had Harris' counsel investigated further he would have discovered that Mr. Flick and his son had not been forced to move to the back of the library and to lie down as the others had been, as Harris had admitted at his change of plea hearing. The rationale of *Ryle v. State* (1990), Ind.App., 549 N.E.2d 81, *trans. denied,* as adopted in *Wethington v. State* (1990), Ind., 560 N.E.2d 496, does not affect the body of case law

> which makes it clear that, given a single criminal transaction, a defendant may appropriately be charged with, convicted of, and sentenced for both confinement and a distinct crime which entails some sort of confinement as necessary to effectuate that crime, such as robbery or rape. *See, e.g., Jones v. State* (1988), Ind., 518 N.E.2d 479; *Purter v. State* (1987), Ind., 515 N.E.2d 858; *Gillie v. State* (1987), Ind., 512 N.E.2d 145; *Brim v. State* (1984), Ind., 471 N.E.2d 676.

560 N.E.2d at 508.

> In *Brim, Gillie* and *Jones,* the victims were confined beyond that inherently included in the offense of robbery. In *Brim,* the victim was forced at gunpoint to move from behind a counter, lie on the floor, help open a cash drawer, and then again ordered to lie on the floor. In *Gillie,* the robber ordered one bank employee to lock the door and another to go into the vault and place money in a sack. The robber subsequently ordered both employees to lie on the vault floor before he escaped. In *Jones,* the victims were

ordered at gunpoint to lie on the floor and bound with duct tape.

*Ryle,* 549 N.E.2d at 85.

When asked at the post-conviction hearing whether he investigated into the potential double jeopardy problem, Harris' counsel testified twice that he believed Harris could be consecutively sentenced on all counts. If by this he meant simply that Harris could be convicted and sentenced on all counts, his belief was correct, based upon the authority we have cited above.

In a separate section of his brief, Harris argues that his sentence violates the proscription against double jeopardy because there was no evidence he confined the Flick child beyond that inherent in the robbery as the State's evidence established that it was the librarian who directed the child to move. Again, the evidence offered as a factual basis for the plea belies this contention. But, even if it were true, there is no factual dispute that Harris himself had ordered everyone to the back of the room and to lie down and the librarian was merely conveying Harris' directive to Mr. Flick and his son.

Harris also maintains that counsel's performance at sentencing was ineffective in that he failed to offer evidence in mitigation when such evidence existed. In particular, Harris maintains that counsel could have presented evidence that he was undergoing severe emotional distress due to an impending divorce; that prior to the time in question he had led a life substantially free of crime and had become a productive member of society; that he had been working toward achieving a college degree and had held employment; that he had been cooperative in this case; that he was 36 years old with one prior felony conviction; that it was never shown he had a gun or that he owned a gun; that there was no bodily injury and he used no physical violence; that he threatened none of the children directly; that when told by the victims that they had no money he did not persist in his demand; that he insisted on pleading guilty and did not want to put the children through a trial and that he wanted to receive his punishment.

To demonstrate ineffective assistance of counsel at sentencing, part of what Harris must show is a reasonable probability that but for counsel's unprofessional performance the result of the proceedings would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Harris has not met this burden.

First of all, Harris has not offered the evidence which he says would have made an impact. He argues simply that evidence should have been presented.

Second, the record shows that counsel did point out many of the matters which Harris now argues would have made a difference: the fact that he had only one prior conviction; that it was not Harris' intent to rob the children; that he was remorseful and thought it important to plead guilty rather than force the children to relive the experience at trial.

Third, we are not convinced of a reasonable probability that beyond bringing these matters to the court's attention, the presentation of this evidence would have made a difference in Harris' sentence. The trial court is not required to agree with the defendant that any particular factor is mitigating. *Sims v. State* (1992), Ind., 585 N.E.2d 271, 272. The fact that Harris was under extreme stress when he committed the crime was already before the sentencing court, in the affidavit for probable cause and again in the presentence report. The fact that Harris had led a life substantially free of crime is a matter of subjective interpretation for the record reflects that it had been only twenty-three months since Harris' parole had ended. The fact that Harris had been employed under the circumstances of this case, is not necessarily mitigating in that Harris used his employment at the hospital as a means of committing the crime. That Harris did not actually have a gun, threaten the children directly or cause them physical harm likewise need not have been given any weight in light of the fact that Harris, in the first instance, chose to rob a place where he knew by reason of his employment that

seriously ill children, who were already fragile and were at risk of harm simply by reason of the movement, were recuperating.

Harris argues that the sentencing court's statement is inadequate and that the sentence imposed is manifestly unreasonable and disproportionate to the nature of the crime. The sentencing court identified four aggravating circumstances justifying the near-maximum sentence: that Harris had a history of prior criminal activity; that he was in need of correctional or rehabilitative treatment that could best be provided by commitment to a penal institution; that a reduced sentence would depreciate the seriousness of the offense; and that the victims of the crime were physically infirm. The court found no mitigating circumstances. The court did not specifically state which circumstances supported the enhancement and which supported the consecutive sentencing and did not give detailed reasons rather than general or conclusory assertions which tracked the language of the statute.

■■■ At the time of the offense, the presumptive sentence for each of the six C felonies was a fixed term of five years to which not more than three years could be added for aggravating circumstances. I.C. 35-50-2-6. The presumptive sentence for a class D felony was a fixed term of two years, with the possibility of an additional two years for aggravating circumstances. I.C. 35-50-2-7.

> Sentencing is conducted within the discretion of the trial court and will be reversed only upon a showing of a manifest abuse of that discretion. It is within the discretion of the trial court to determine whether a presumptive sentence will be increased or decreased because of aggravating or mitigating circumstances. A sentence authorized by statute will not be revised except where the sentence is manifestly unreasonable. *Letica v. State* (1991), Ind., 569 N.E.2d 952, 958 (citations omitted). A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and

offender for which such sentence was imposed. Ind.Appellate Rule 17(B)(2). When a sentencing court enhances a presumptive sentence, the record 'must demonstrate that the determination was based upon the consideration of the facts of the specific crime, the aggravating and mitigating circumstances involved, and the relation of the sentence imposed to the objectives which will be served by that sentence.' *Fointno v. State* (1986), Ind., 487 N.E.2d 140, 144. The trial court's statement must identify all significant mitigating and aggravating circumstances, including a specific reason why each circumstance is mitigating or aggravating, and weigh mitigating circumstances against the aggravating factors. *Boyd v. State* (1991), Ind., 564 N.E.2d 519, 524.

*Sims*, 585 N.E.2d at 272. However, when the record indicates that the trial judge engaged in the evaluative processes but simply did not sufficiently articulate his reasons for enhancing the sentence, and the record indicates that the sentence imposed was not manifestly unreasonable, then the purposes underlying the specificity requirement have been satisfied. *Henderson v. State* (1986), Ind., 489 N.E.2d 68, 72.

■■■ The trial court need list only one valid aggravating factor to support an enhanced sentence. *Duvall v. State* (1989), Ind., 540 N.E.2d 34, 36. An enhanced sentence can be imposed when the only aggravating circumstance is a prior criminal history or the young age of the victim. *Id.*

■■■ Like the sentencing court, we are struck by the reprehensible nature of the offense. Harris put three innocent children, two of whom had been diagnosed as terminally ill, in fear for their own safety and the safety of the people they loved. Harris worked at the hospital and knew the library was used by the children as a place to relax. Harris may have been under stress but his stress could not have been any greater than that of the persons he chose to rob.

The victims' testimony at sentencing indicates that the children were forced to lie

down even though they were attached to intravenous apparatuses at the time and could not have posed a threat to Harris. And, while it may be true that the entire incident lasted only a few minutes, it left a prolonged effect upon the children, who no longer felt safe in the hospital yet were required to spend much of their lives there. The suggestion that Harris somehow spared the child victims because he did not cause them physical harm does not minimize the lasting nature of the mental and emotional trauma he caused them to endure during their short lives. Harris confined seven victims, frightening all seven of them, but six of the victims suffered the additional fear of witnessing harm to a person they loved.

Harris made a conscious choice to abuse alcohol and drugs, and the record suggests that he deliberately robbed the library, checking it out in advance and planning his method of disguise. He could have avoided these victims altogether. The record thus amply supports the sentencing court's finding that a lesser penalty would depreciate the seriousness of each crime and that the circumstances of the entire episode as a whole are sufficiently distinguishable to warrant a significantly enhanced sentence.

Harris appears to be arguing that the absence of more of a criminal record should weigh against the aggravated penalty imposed. The sentencing court need not have agreed. The record reflects that while Harris had been convicted of only one other crime, it was a felony robbery for which he received an executed sentence of eight years and had only finished serving his sentence twenty-three months earlier. The fact that ten years had passed since Harris had committed the first robbery says nothing more about him than that he was in prison or under court supervision for the major portion of that time.

■ Harris expressed remorse to both of the probation officers and the court. Neither probation officer recommended that any weight be attributed to this factor, and the court did not find it appropriate to do so. Whether Harris was genuinely remorseful such that it would make a differ-

ence in his sentence is a matter which we cannot fairly and competently evaluate. The sentencing court had the opportunity to evaluate Harris' demeanor and assess his sincerity. Our responsibility is not to substitute our judgment for that of the sentencing court but to determine whether any reasonable person could find the sentence appropriate given the nature of the offense and the offender. It is our conclusion that a reasonable person could find this sentence appropriate under the circumstances.

■ Lastly, Harris argues that a valid judgment was never entered against him because the judge pro tempore who accepted his plea and sentenced him had not been appointed to serve as judge pro tempore on the day of sentencing and in fact could not have been so appointed because the regular judge of the court was presiding over the proceedings in her court on that day. A judge pro tempore may not properly act as a judge of a court in one room while the regular judge of that court is exercising jurisdiction in another room. *Survance v. State* (1984), Ind., 465 N.E.2d 1076, 1082.

■ The expiration of a judge pro tempore's term does not necessarily end his or her authority. Once a judge pro tempore has begun consideration of the case, that is, has begun hearing evidence, he or she has jurisdiction to hear the case to completion. *Hupp v. Hill* (1991), Ind.App., 576 N.E.2d 1320, 1324; *Needham v. Needham* (1980), Ind.App., 408 N.E.2d 562, 563. The theory underlying Ind.Trial Rule 63 is that the trial judge has continuing jurisdiction as if he had been appointed special judge. *State v. Smith* (1973), 260 Ind. 555, 297 N.E.2d 809.

■ However, even if there were some defect in the appointment of the judge pro tempore, any objection to the authority of the attorney appointed to act upon the cause must be made at the time he or she assumes to act or the objection will be deemed waived on appeal. *Skipper v. State* (1988), Ind., 525 N.E.2d 334, 335; *Survance*, 465 N.E.2d 1076, 1082 (citing

34

*Gordy v. State* (1974), 262 Ind. 275, 315 N.E.2d 362).

The record shows that the judge pro tempore was properly appointed and sworn to accept Harris' change of plea. Error, if any, which occurred by the judge pro tempore's exercise of jurisdiction at Harris' sentencing is deemed waived.

Judgment affirmed.

HOFFMAN and FRIEDLANDER, JJ., concur.