## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 06 2017, 10:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy P. Broden
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Terry Paul Henton<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Petitioner* | October 6, 2017<br><br>Court of Appeals Case No.<br>79A02-1703-CR-535<br><br>Appeal from the Tippecanoe<br>Superior Court<br><br>The Honorable Steven P. Meyer,<br>Judge<br><br>Trial Court Cause No.<br>79D02-1506-F5-33 |

**May, Judge.**

[1] Terry Paul Henton appeals his conviction of Level 5 felony robbery,[1] asserting the evidence was insufficient to prove he used or threatened to use force. We affirm.

## Facts and Procedural History

[2] In May 2015, an AT&T store in Lafayette, Indiana, had an "experience table" where customers could evaluate the features and functions of various phones before deciding which phone to purchase. (Tr. at 38.) The telephones on this table were unlocked, so that customers could access all the functions without entering a password, and were capable of sending texts and placing phone calls. The phones were connected to the table by a single cord that functioned both as a security device and as a charging cable. An AT&T employee explained

> we attach a security mechanism into the inside of the table so the table . . . has an insert. That security mechanism connects these telephone cord looking cords, I want to say, but it basically just shoots an electrical charge to each phone. And we attach it to the phone on the front and the back with an adhesive and then the charging cord so that the phone can stay alive. . . . [T]here's an adhesive, a box of about this big, so about two inches, if that, if that makes any sense, you attach the adhesive to the back of the phone, so that if a person is trying to tamper with it or steal the battery or something like that, they can't pry the back off of the phone for phones that have backs that can be taken off of, which are fair amount of the S5 Galaxies. So, that actual security sensor also has a wrapped part that wraps around the

[1] Ind. Code § 35-42-5-1 (2014).

front. It has a red light on it, so that basically attaches the tube so that if it's ever tampered with or somebody tries to take it off or take the back off so that they can retrieve the phone, the alarm still sounds. . . . That coil is attached to a table, and that is, that electrical cord is run there. So that is running all day and if anybody stops it or triggers the device, that's when the sound triggers.

(*Id*. at 40, 51-2.)

Around 7:30 p.m. on May 27, 2015, Henton entered the AT&T store and asked the employee greeting customers at the door if the employee had seen a baby bottle that Henton allegedly had left in the store earlier. As that employee canvassed the store for a bottle and asked other employees if they had seen a bottle, Henton approached the experience table. He tapped each cell phone and, finding it unlocked, he picked it up and held onto it as he moved down the line of phones on the table.

As he reached around another customer to pick up the phone that was being explained to that customer by a sales associate, Arneetric Rias-Thompson, Rias-Thompson thought Henton was being rude and grabbed the security wire to keep the phone in front of her customers. Henton backed away from the table, which straightened the curled security cables and then he "used his leverage" to lean back and snapped the cords, including the cord in Rias-Thompson's hand. (*Id*. at 41.) Henton then "stumbled maybe like one or two steps, because it does take a little bit of force to break it," (*id*. at 43), and ran out of the store with five or six smartphones.

[5] The State charged Henton with Level 5 felony robbery, Level 6 felony conspiracy to commit theft,[2] and two counts of Level 6 felony theft.[3] It also alleged he was an habitual offender.[4] Henton pled guilty to all charges except the Level 5 felony robbery. After a bench trial, the court convicted him of that crime and imposed an aggregate sentence of ten years.

# Discussion and Decision

[6] When reviewing sufficiency of the evidence in support of a conviction, we will consider only probative evidence in the light most favorable to the trial court's judgment. *Binkley v. State,* 654 N.E.2d 736, 737 (Ind. 2007), *reh'g denied.* The decision comes before us with a presumption of legitimacy, and we will not substitute our judgment for that of the fact-finder. *Id.* We do not assess the credibility of the witnesses or reweigh the evidence in determining whether the evidence is sufficient. *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007). Reversal is appropriate only when no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* Thus, the evidence is not required to overcome every reasonable hypothesis of innocence and is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.* at 147.

---

[2] Ind. Code §§35-43-4-2(a)(1)(A) (theft) (2014), 35-41-5-2 (conspiracy).

[3] Ind. Code § 35-43-4-2(a)(1)(A) (2014).

[4] Ind. Code § 35-50-2-8 (2014).

[7] Henton was convicted of Level 5 felony robbery, which occurs when a person

> knowingly or intentionally takes property from another person or from the presence of another person:
>
> (1) by using or threatening the use of force on any person; or
>
> (2) by putting any person in fear . . . .

Ind. Code § 35-42-5-1 (2014). At the end of trial, the court noted:

> The . . . AT&T employee at one point had the cords attached to the phone in her hand and she had a grasp of that. But based upon her testimony, the force that was being exerted by the Defendant caused those cords to snap and allowed him to leave the store with the phones. That sounds like to the Court that there was force used to dislodge at least the cords, and the cord is attached to the phone, from the possession of the AT&T employee. . . . [I]n this case, there is some physical exertion of some force used to break the cord and to break it out of the possession of the employee. Therefore, I think the State has satisfied one of the three elements of robbery, which is by using or threatening the use of force and by using the amount of force necessary to break that phone free from the table.

(Tr. at 73-4.)

[8] When she was on the witness stand, Rias-Thompson confirmed that she was "shocked" and "scared" by Henton's stealing of the smartphones. (*Id.* at 67.) The prosecutor asked Rias-Thompson why she was scared by the incident when Henton had not threatened anyone, and Rias-Thompson replied:

> I mean you're at work and something like this happens, I think it shocks anybody, but I was really shocked about the, the cords, because I put together so many of these mechanisms and we've tested them pretty roughly of, you know, how hard you would have to pull to get them off, how you would have to do with that, but that was the most shocking to me is that, the, the breaking of the cords.

(*Id.* at 68.) She also testified she was afraid she would be injured by the copper wire that runs through the cord to carry the electrical current.

[9] More than thirty years ago, our Indiana Supreme Court explained, with regard to a 1984 Class C felony version of robbery that contained the exact same elements required for Henton's conviction:

> Under our present statute, the offense of robbery as a Class C felony does not require that a certain amount or type of force be proved to establish the commission of that offense. This Court has long recognized that the particular degree of force necessary to constitute robbery is not defined by statute or the common law. We have held that the degree of force used to constitute the crime of robbery has to be a greater degree of force than would be necessary to take possession of the victim's property if no resistance was offered and that there must be enough force to constitute violence.

*Maul v. State*, 467 N.E.2d 1197, 1199 (Ind. 1984), *reh'g denied*. Furthermore, "when the owner, aware of an impending snatching, resists it, or when, the thief's first attempt being ineffective to separate the owner from his property, a struggle for the property is necessary before the thief can get possession thereof, there is enough force to make the taking robbery." *Ryle v. State*, 549 N.E.2d 81,

84 n.5 (Ind. Ct. App. 1990) (quoting 2 W. LaFave & A. Scott, Substantive Criminal Law 445-50 (1986)), *trans. denied*. Here, Rias-Thompson attempted to resist Henton's snatching of the phone by grabbing the security cord, and to free the phone, Henton pulled on the cord with sufficient force to snap the cord. We conclude this was sufficient force exerted against Rias-Thompson's control over the property to prove Henton guilty of Level 5 felony robbery as charged.

# Conclusion

The State presented sufficient evidence for the trial court to find Henton used force when he snapped the cord to take the smartphone from Rias-Thompson. We therefore affirm Henton's conviction of Level 5 felony robbery.

Affirmed.

Barnes, J., and Bradford, J., concur.